1

2

3

4

5

6

The Honorable Marsha J. Pechman

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| F5 NETWORKS, INC., a Washington corporation,<br><br>         Plaintiff,<br><br>    v.<br><br>A10 NETWORKS, INC., a California corporation,<br><br>         Defendant. | No. C10-00654 MJP<br><br>A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS<br><br>AND JURY DEMAND |

Defendant A10 Networks, Inc. ("A10") respectfully submits its amended answer, affirmative defenses, and counterclaims to Plaintiff F5 Networks, Inc.'s ("F5") "Second Amended Complaint for Patent Infringement, Misappropriation of Trade Secrets, and Unfair Competition"[1] ("Complaint") (Dkt. No. 28), as follows:

**THE PARTIES**

1.     A10 lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 of the Complaint, and therefore denies them on that basis.

2.     A10 admits the allegations in paragraph 2 of the Complaint.

---

[1] Since the filing of its Second Amended Complaint, F5 has stipulated to the dismissal of its Claim for Unfair Competition. *See* Dkt. No. 32.

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND AMENDED COMPLAINT - 1
(C10-00654 MJP)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1

**JURISDICTION AND VENUE**

2   3.    A10 admits that the Complaint purports to assert causes of action for patent

3   infringement, misappropriation of trade secrets, and unfair competition in paragraph 3 of the

4   Complaint, but denies that such causes of action are adequately pled or that F5 is entitled to

5   relief. A10 also denies that this Court has jurisdiction over the nonpatent counts.  A10 admits the

6   balance of the allegations concerning jurisdiction.

7   4.    A10 denies the allegations of paragraph 4 of the Complaint.

8   **PLAINTIFF AND ITS ALLEGED RIGHTS**

9   5.    A10 admits that F5 provides products and services that manage message traffic

10  over the Internet, including to and from web servers.  Except as so expressly admitted, A10

11  denies the remaining allegations in paragraph 5 of the Complaint.

12  6.    A10 admits that the U.S. Patent and Trademark Office ("USPTO") has issued

13  patents that, on their face, are assigned to F5, but otherwise denies the allegations in paragraph 6

14  of the Complaint.

15  7.    A10 admits that Exhibit A to the Complaint is a copy of U.S. Patent

16  No. 7,102,996 ("the '996 patent"), which is titled "Method and System for Scaling Network

17  Traffic Managers."  A10 lacks knowledge or information sufficient to form a belief as to the

18  truth of the remaining allegations in paragraph 7 of the Complaint, and therefore denies them on

19  that basis.

20  8.    A10 admits that the '996 patent is, on its face, assigned to F5, but otherwise lacks

21  knowledge or information sufficient to form a belief as to the truth of the allegations in

22  paragraph 8 of the Complaint, and therefore denies them on that basis.

23  9.    A10 admits that Exhibit B to the Complaint is a copy of U.S. Patent

24  No. 7,395,349 ("the '349 patent"), which is titled "Method and System for Scaling Network

25  Traffic Managers."  A10 lacks knowledge or information sufficient to form a belief as to the

26  truth of the remaining allegations in paragraph 9 of the Complaint, and therefore denies them on

27  that basis.

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 2
(C10-00654 MJP)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

10.     A10 admits that the '349 patent is, on its face, assigned to F5, but otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10 of the Complaint, and therefore denies them on that basis.

11.     A10 admits that Exhibit C to the Complaint is a copy of U.S. Patent No. 7,697,427 ("the '427 patent"), which is titled "Method and System for Scaling Network Traffic Managers." A10 lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 11 of the Complaint, and therefore denies them on that basis.

12.     A10 admits that the '427 patent is, on its face, assigned to F5, but otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 of the Complaint, and therefore denies them on that basis.

13.     A10 admits that Exhibit D to the Complaint is a copy of U.S. Patent No. 7,702,809 ("the '809 patent"), which is titled "Method and System for Scaling Network Traffic Managers." A10 lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 13 of the Complaint, and therefore denies them on that basis.

14.     A10 admits that the '809 patent is, on its face, assigned to F5, but otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 of the Complaint, and therefore denies them on that basis.

## F5's CLAIM FOR PATENT INFRINGEMENT

15.     Responding to paragraph 15 of the Complaint, A10 repeats and realleges its responses to each of the allegations contained in paragraphs 1-14 above as if fully set forth herein.

16.     A10 denies the allegations in paragraph 16 of the Complaint and notes that such allegations were resolved as part of a confidential settlement between the parties.

17.     A10 denies the allegations in paragraph 17 of the Complaint and notes that such allegations were resolved as part of a confidential settlement between the parties.

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 3
(C10-00654 MJP)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1

18.     A10 denies the allegations in paragraph 18 of the Complaint.

19.     A10 denies the allegations in paragraph 19 of the Complaint.

20.     A10 denies the allegations in paragraph 20 of the Complaint.

21.     A10 denies the allegations in paragraph 21 of the Complaint.

22.     A10 denies the allegations in paragraph 22 of the Complaint.

23.     A10 denies the allegations in paragraph 23 of the Complaint.

### F5's CLAIM FOR MISAPPROPRIATION OF TRADE SECRETS

24.     Responding to paragraph 24 of the Complaint, A10 repeats and realleges its responses to each of the allegations contained in paragraphs 1-23 above as if fully set forth herein.

25.     A10 lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25 of the Complaint, and therefore denies them on that basis.

26.     A10 lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26 of the Complaint, and therefore denies them on that basis.

27.     A10 lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27 of the Complaint, and therefore denies them on that basis.

28.     A10 denies the allegations in paragraph 28 of the Complaint.

29.     A10 denies the allegations in paragraph 29 of the Complaint.

30.     A10 denies the allegations in paragraph 30 of the Complaint.

### F5's CLAIM FOR UNFAIR COMPETITION

31.     Although F5's Claim for Unfair Competition is no longer in the case,[2] A10 responds to paragraph 31 of the Complaint by repeating and realleging its responses to each of the allegations contained in paragraphs 1-30 above as if fully set forth herein.

32.     Although F5's Claim for Unfair Competition is no longer in the case, A10 denies the allegations in paragraph 32 of the Complaint.

---

[2]  As noted, F5's Claim for Unfair Competition is no longer in the case.  *See* note 1, *supra* (citing Dkt. No. 32).

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 4
(C10-00654 MJP)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1

33.     Although F5's Claim for Unfair Competition is no longer in the case, A10 denies the allegations in paragraph 33 of the Complaint.

### F5's PRAYER FOR RELIEF

In response to F5's prayer for relief in the Complaint, A10 denies that F5 is entitled to (i) damages of any kind, (ii) injunctive relief, (iii) attorneys' fees, or (iv) any other relief whatsoever.

### A10's AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state any claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

A10 has not infringed and does not infringe, directly, indirectly, or otherwise, any valid and enforceable claim of any of the '996, '349, '427, and '809 patents (collectively "the patents-in-suit").

### THIRD AFFIRMATIVE DEFENSE

Each and every claim of each of the patents-in-suit is invalid for failing to meet one or more of the requirements of patentability specified in Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101 *et seq.*

### FOURTH AFFIRMATIVE DEFENSE

The Complaint is barred at least in part by the applicable statute of limitations.

### FIFTH AFFIRMATIVE DEFENSE

The Complaint is barred at least in part by *res judicata.*

### SIXTH AFFIRMATIVE DEFENSE

The Complaint is barred at least in part by the doctrines of waiver and estoppel.

### SEVENTH AFFIRMATIVE DEFENSE

The Complaint is barred at least in part by the doctrine of unclean hands.

### EIGHTH AFFIRMATIVE DEFENSE

F5 is not entitled to injunctive relief because it has an adequate remedy at law.

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 5
(C10-00654 MJP)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1

1

### NINTH AFFIRMATIVE DEFENSE

2    The Complaint is barred at least in part by preemption under federal or state law.

3

### TENTH AFFIRMATIVE DEFENSE

4    All four of the patents-in-suit are unenforceable due to inequitable conduct committed

5    during the prosecution of the patent applications before the USPTO, for at least the reasons set

6    forth below in A10's Ninth Counterclaim, which reasons are incorporated into this defense.

7

### ELEVENTH AFFIRMATIVE DEFENSE

8    The Court lacks subject matter jurisdiction over F5's trade secret misappropriation claim.

9

### TWELFTH AFFIRMATIVE DEFENSE

10    F5's trade secret misappropriation claim is based on alleged damage resulting from

11    alleged acts that occurred substantially or exclusively outside the United States, rendering the

12    claim one that is not properly cognizable by a United States Court.

13

### THIRTEENTH AFFIRMATIVE DEFENSE

14    F5's claim for trade secret misappropriation is barred because the alleged trade secrets on

15    which F5's claim is based are not protectable trade secrets and/or A10 has not misappropriated

16    any F5 trade secret.

17

### FOURTEENTH AFFIRMATIVE DEFENSE

18    A10 reserves the right to assert additional defenses including misuse, unfair competition,

19    and unenforceability of the '809 patent for inequitable conduct, as well other defenses, as the

20    facts may indicate during discovery.

21

### A10's COUNTERCLAIMS

22    A10 alleges its counterclaims against F5 as follows:

23

### JURISDICTION AND VENUE

24    1.    This Court at least has supplemental jurisdiction over the subject matter of these

25    Counterclaims pursuant to 28 U.S.C. § 1367(a) because the Counterclaims are related to the

26    same transaction or occurrence underlying F5's action.  Certain Counterclaims arise under the

27    Patent Laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. §§ 271 and 281,

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 6
(C10-00654 MJP)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1   giving this Court original jurisdiction over them pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2   This Court may declare the rights of the parties pursuant to 28 U.S.C. §§ 2201-2202.

3       2.    Venue is proper in this Court pursuant to at least 28 U.S.C. §§ 1391(b)-(c), and/or

4   1400(b), because (i) F5 commenced this action in this judicial district, (ii) a substantial part of

5   the events giving rise to these Counterclaims occurred in this judicial district, and/or (iii) F5 is

6   either resident in or otherwise subject to personal jurisdiction in this judicial district.

7   **THE PARTIES**

8       3.    A10 is a corporation organized and existing under the laws of the State of

9   California, with its principal place of business at 2309 Bering Drive, San Jose, California 95131.

10      4.    The Complaint alleges that F5 is a corporation organized and existing under the

11  laws of the State of Washington, with its principal place of business at 401 Elliott Avenue West,

12  Seattle, Washington 98119.  On information and belief, A10 therefore, realleges and incorporates

13  by reference this allegation by F5.

14
15  **FIRST COUNTERCLAIM**
    **(Declaratory Judgment of Noninfringement of the '996 Patent)**

16      5.    A10 realleges and incorporates by reference the allegations set forth in paragraphs

17  1-4 of its Counterclaims.

18      6.    This case establishes the existence of an actual case or controversy between A10

19  and F5 concerning the alleged infringement of the '996 patent.

20      7.    A10 has not infringed and does not infringe, has not contributed and does not

21  contribute to the infringement of, has not actively induced and does not actively induce others to

22  infringe, and has not been induced by others to infringe, directly or indirectly, willfully or

23  otherwise, any valid and enforceable claim of the '996 patent.

24      8.    A10 seeks a declaration from this Court that A10 does not infringe any claim of

25  the '996 patent.

26      9.    A10 alternatively seeks a declaration from this Court that any alleged

27  infringement by A10 would not be actionable by F5 by virtue of at least one or more of the

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 7
(C10-00654 MJP)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1

Affirmative Defenses listed above and/or one or more of the Counterclaims listed below.

## SECOND COUNTERCLAIM
### (Declaratory Judgment of Invalidity of the '996 Patent)

10.     A10 realleges and incorporates by reference the allegations set forth in paragraphs 1-9 of its Counterclaims.

11.     This case establishes the existence of an actual case or controversy between A10 and F5 concerning the alleged invalidity of the '996 patent.

12.     Each claim of the '996 patent is invalid for failing to meet one or more of the requirements of patentability specified in Title 35 of the United States Code, including but not limited to, 35 U.S.C. §§ 102, 103, and/or 112.

13.     A10 seeks a declaration from this Court that the claims of the '996 patent are invalid.

## THIRD COUNTERCLAIM
### (Declaratory Judgment of Noninfringement of the '349 Patent)

14.     A10 realleges and incorporates by reference the allegations set forth in paragraphs 1-13 of its Counterclaims.

15.     This case establishes the existence of an actual case or controversy between A10 and F5 concerning the alleged infringement of the '349 patent.

16.     A10 has not infringed and does not infringe, has not contributed and does not contribute to the infringement of, has not actively induced and does not actively induce others to infringe, and has not been induced by others to infringe, directly or indirectly, willfully or otherwise, any valid and enforceable claim of the '349 patent.

17.     A10 seeks a declaration from this Court that A10 does not infringe any claim of the '349 patent.

18.     A10 alternatively seeks a declaration from this Court that any alleged infringement by A10 would not be actionable by F5 by virtue of at least one or more of the Affirmative Defenses listed above and/or one or more of the Counterclaims listed below.

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 8
(C10-00654 MJP)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

**FOURTH COUNTERCLAIM**
**(Declaratory Judgment of Invalidity of the '349 Patent)**

19.     A10 realleges and incorporates by reference the allegations set forth in paragraphs 1-18 of its Counterclaims.

20.     This case establishes the existence of an actual case or controversy between A10 and F5 concerning the alleged invalidity of the '349 patent.

21.     Each claim of the '349 patent is invalid for failing to meet one or more of the requirements of patentability specified in Title 35 of the United States Code, including but not limited to, 35 U.S.C. §§ 102, 103, and/or 112.

22.     A10 seeks a declaration from this Court that the claims of the '349 patent are invalid.

**FIFTH COUNTERCLAIM**
**(Declaratory Judgment of Noninfringement of the '427 Patent)**

23.     A10 realleges and incorporates by reference the allegations set forth in paragraphs 1-22 of its Counterclaims.

24.     This case establishes the existence of an actual case or controversy between A10 and F5 concerning the alleged infringement of the '427 patent.

25.     A10 has not infringed and does not infringe, has not contributed and does not contribute to the infringement of, has not actively induced and does not actively induce others to infringe, and has not been induced by others to infringe, directly or indirectly, willfully or otherwise, any valid and enforceable claim of the '427 patent.

26.     A10 seeks a declaration from this Court that A10 does not infringe any claim of the '427 patent.

27.     A10 alternatively seeks a declaration from this Court that any alleged infringement by A10 would not be actionable by F5 by virtue of at least one or more of the Affirmative Defenses listed above and/or one or more of the Counterclaims listed below.

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 9
(C10-00654 MJP)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## SIXTH COUNTERCLAIM
### (Declaratory Judgment of Invalidity of the '427 Patent)

28.     A10 realleges and incorporates by reference the allegations set forth in paragraphs 1-27 of its Counterclaims.

29.     This case establishes the existence of an actual case or controversy between A10 and F5 concerning the alleged invalidity of the '427 patent.

30.     Each claim of the '427 patent is invalid for failing to meet one or more of the requirements of patentability specified in Title 35 of the United States Code, including but not limited to, 35 U.S.C. §§ 102, 103, and/or 112.

31.     A10 seeks a declaration from this Court that the claims of the '427 patent are invalid.

## SEVENTH COUNTERCLAIM
### (Declaratory Judgment of Noninfringement of the '809 Patent)

32.     A10 realleges and incorporates by reference the allegations set forth in paragraphs 1-31 of its Counterclaims.

33.     This case establishes the existence of an actual case or controversy between A10 and F5 concerning the alleged infringement of the '809 patent.

34.     A10 has not infringed and does not infringe, has not contributed and does not contribute to the infringement of, has not actively induced and does not actively induce others to infringe, and has not been induced by others to infringe, directly or indirectly, willfully or otherwise, any valid and enforceable claim of the '809 patent.

35.     A10 seeks a declaration from this Court that A10 does not infringe any claim of the '809 patent.

36.     A10 alternatively seeks a declaration from this Court that any alleged infringement by A10 would not be actionable by F5 by virtue of at least one or more of the Affirmative Defenses listed above and/or one or more of the Counterclaims listed below.

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 10
(C10-00654 MJP)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1

**EIGHTH COUNTERCLAIM**
**(Declaratory Judgment of Invalidity of the '809 Patent)**

37.     A10 realleges and incorporates by reference the allegations set forth in paragraphs 1-36 of its Counterclaims.

38.     This case establishes the existence of an actual case or controversy between A10 and F5 concerning the alleged invalidity of the '809 patent.

39.     Each claim of the '809 patent is invalid for failing to meet one or more of the requirements of patentability specified in Title 35 of the United States Code, including but not limited to, 35 U.S.C. §§ 102, 103, and/or 112.

40.     A10 seeks a declaration from this Court that the claims of the '809 patent are invalid.

**NINTH COUNTERCLAIM**
**(Declaratory Judgment of Unenforceability of All Asserted Patents)**

41.     A10 realleges and incorporates by reference the allegations set forth in paragraphs 1-40 of its Counterclaims.

42.     Upon information and belief, all of the patents-in-suit are unenforceable by reason of the patentee's inequitable conduct, which resulted from acts and/or failures to act by those individuals that had a duty of candor to the USPTO arising from their involvement in the prosecution of each of the patent applications that matured into the asserted patents.  The factual bases for A10's Ninth Counterclaim are detailed below.  *See* Paragraphs 43-52(17), *infra*.

43.     In sum, as substantiated below, during the pendency of the patent applications that ultimately matured into the asserted patents, those individuals obligated by the duty of candor to disclose to the USPTO "material" information of which they were aware (including, *e.g.*, the named employee-inventors, and others substantively involved in the prosecution of the patent applications that matured into the asserted patents) failed to satisfy that duty, at least by deliberately withholding from the USPTO relevant, material, and noncumulative prior art (*i.e.*, F5's own product BIG/ip Controller (version 3.1) and its accompanying descriptive product

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 11
(C10-00654 MJP)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1

information) with intent to deceive the USPTO into granting the asserted patents.[3]  The subject withheld information is prior art to all of the asserted patents at least because the relevant F5 product was on public sale in the United States more than one year prior to the earliest priority date of those patents.  Moreover, the accompanying F5 product information was published and publicly available (on, *e.g.*, F5's website) more than one year prior to the earliest (shared) priority date of the patents-in-suit.  The F5 product and its accompanying product information were (i) on information and belief, known to the named employee-inventors and others substantively involved in the prosecution of the patent applications that matured into the asserted patents, (ii) material to the USPTO's determination of whether the claims of the asserted patents were patentable (by, *e.g.*, being noncumulative to the art of record); and (iii) on information and belief, deliberately kept from the USPTO with intent to deceive that agency into issuing the patents.  As substantiated below, that complete failure to disclose the F5 BIG/ip Controller (version 3.1) and its accompanying descriptive product information to the USPTO at any point during the prosecution of the four related patents-in-suit (which, all told, spanned approximately nine (9) years) amounts to inequitable conduct, rendering all of the asserted patents entirely unenforceable.

44.    The '996 patent (corresponding application filed on April 9, 2002) claims priority to U.S. Provisional Application No. 60/293,466, which F5 filed on May 24, 2001.  The '427 patent (corresponding application filed on September 1, 2006) purports to be a continuation of the '996 patent, and the '349 patent (corresponding application filed on August 20, 2003) purports to be a continuation-in-part of the '996 patent.  The '809 patent (corresponding application filed on October 30, 2007) purports to be a continuation of the '349 patent.  Thus, the earliest priority date of the patents-in-suit is May 24, 2001.  With respect to the potential prior art to the asserted patents, 35 U.S.C. § 102(b) establishes May 24, 2000, as the so-called "critical

---

[3]  Generally, information is "material" if there is a substantial likelihood that a reasonable patent examiner would consider it important in deciding whether to allow the application to issue as a patent.

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 12
(C10-00654 MJP)

1   date."  In other words, if the inventions claimed in the patents-in-suit were either described in

2   any printed publication or were in public use or on sale in this country before May 24, 2000, the

3   printed publication and the prior use or sale are prior art.  And if such withheld prior art was

4   "material" information and was known to anyone substantively involved in the prosecution of

5   the patent applications that matured into the asserted patents, that art should have been disclosed

6   to the USPTO.

7        45.      F5 released Version 3.1 of its BIG/ip Controller ("the F5 Controller") for public

8   sale on or about April 28, 2000.  *See* Exhibit 1 ("Release Note:  BIG-IP Controller Release Note,

9   version 3.1 (4/28/2000)").  The related printed material that described the structure and functions

10  of that F5 Controller ("the F5 Product Information") was, on information and belief, published

11  and made available[4] on F5's website at the time of the product's release or very soon thereafter.

12  The F5  Product Information included, for example:

13              (1)     BIG/ip™ Controller Administrator Guide (version 3.1) (bearing a

14                      copyright notice of "1997-2000") (copy attached as Exhibit 2); and

15              (2)     BIG/ip™ Controller Reference Guide (version 3.1) (bearing a copyright

16                      notice "1997-2000") (copy attached as Exhibit 3).

17       46.      The F5 Controller and the F5 Product Information (collectively "the F5 Prior

18  Art"), which disclose limitations found in the claims of the patents-in-suit, would have been of

19  great interest to the USPTO in assessing patentability of those claims and should have been

20  disclosed.  However, none of the named inventors (or any of the other individuals that were also

21  substantively involved in the prosecution of the '996, '427, '349, and '809 patent applications)

22  ever disclosed the F5 Prior Art to the USPTO during the prosecution of the patents-in-suit,

23  despite their duty of candor, which obligated each of them to do so.

24       47.      Because the individuals that owed a duty of candor each failed to disclose the F5

25

26  ---

    [4]  The timestamp in the document properties of the F5 Product Information shows that the following F5 Product
27  Information was created on April 28, 2000, and has not updated since then.

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND            **Williams, Kastner & Gibbs PLLC**
AMENDED COMPLAINT - 13                                   601 Union Street, Suite 4100
(C10-00654 MJP)                                          Seattle, Washington 98101-2380
                                                         (206) 628-6600

3002887.1

Prior Art, the USPTO Examiners that examined the patents-in-suit were not aware of information that would have been material to assessing patentability.

48.    Many, if not all, of the individuals with a duty of candor withheld information that they knew or should have known would have been of interest to the USPTO Examiners (*i.e.*, was material information) and, on information and belief, did so deliberately and with an intent to deceive the Examiners, as further substantiated below.  A10 thus alleges that one or more individuals from the group that owed a duty of candor to the USPTO (*i.e.*, the named inventors and any other individual that was substantively involved in the prosecution of the applications that matured into the asserted patents, including, but not limited to, F5's patent prosecution counsel as identified in the patent file histories and on the cover pages of the asserted patents) engaged in inequitable conduct, rendering the asserted patents unenforceable.

**Inequitable Conduct:  the '996 Patent**

49.    A10 alleges that the '996 patent is unenforceable by reason of the patentee's inequitable conduct for failing to disclose the F5 Prior Art during the prosecution of that patent as follows:

(1)    F5 filed U.S. Provisional Application No. 60/293,466 ("the '466 Provisional Application") on May 24, 2001, on behalf of named inventors Carlton G. Amdahl, Robert George Gilde, David D. Schmitt, Paul I. Szabo, and Richard Roderick Masters.  John W. Branch acted as prosecution counsel.[5]

(2)    F5 filed U.S. Application No. 10/119,433—which ultimately issued as the '996 patent—on April 9, 2002, on behalf of named inventors Carlton G. Amdahl, Robert George Gilde, David D. Schmitt, Paul I. Szabo, and Richard Roderick Masters.  Each assigned all of his rights to F5.  The '996

---

[5]  At the time, Mr. Branch was first with Merchant & Gould, and then with Darby & Darby P.C., which firm no longer exists.  *See* http://www.darbylaw.com.  On information and belief, John W. Branch is now with Frommer, Lawrence & Haug.

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 14
(C10-00654 MJP)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1

1    patent claims the benefit of the May 24, 2001, filing date of the '466

2    Provisional Application.  John W. Branch  represented the inventors and F5

3    before the USPTO throughout the prosecution of the '996 application.  *See*

4    note 4, *supra*.  The '996 patent issued on September 5, 2006.

5    (3)    In a nonfinal Office Action bearing a March 30, 2006, "date mailed," the

6    Examiner explained why the pending claims were allowable over the art of

7    record:

> For claims 1-32 and 34, the prior art fails to teach a combination of:  if the packet includes a source address that is associated with a first set of addresses, forwarding the packet to a first traffic manager that is selected using a destination address of the packet, and if the packet includes a destination address that is associated with a second set of addresses, forwarding the packet to a second traffic manager that is selected using a source address of the packet, wherein the first traffic manager and the second traffic manager are the same for each packet in a flow between two network devices.

That quoted language paraphrases certain limitations that are found in the

asserted independent claims 1, 12, 19-20, and 33 of the '996 patent.[6]

15    (4)    Paragraphs 49(5) – 49(29) below provide further factual details presently

16    known to A10 relating to the failures to disclose the F5 Prior Art, which

17    support A10's allegations that the F5 Prior Art was "material" art that was

18    deliberately and intentionally withheld from the USPTO and that, as a

19    result, the '996 patent should be declared unenforceable for the inequitable

20    conduct that was committed by at least the named inventors and any other

21    individual that was substantively involved in the prosecution of the '996

22    patent, including F5's prosecution counsel.

23    (5)    The group of individuals who owed a duty of candor and good faith to the

24    USPTO (*see, e.g.*, 37 C.F.R. § 1.56(c)) include the named inventors and

---

[6]  *See* Plaintiff F5 Networks' Disclosure of Asserted Claims and Preliminary Infringement Contentions, dated November 1, 2010 (identifying, claims 1-3, 12-13, 17, 19-20, and 33 of  the '996 patent).

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 15
(C10-00654 MJP)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1

1          F5's prosecution counsel.[7]

2     (6)    The duty of candor and good faith first arose as early as May 24, 2001 (the

3          priority date for the '996 patent, corresponding to the date that F5 filed the

4          '466 Provisional Application), and existed throughout the prosecution of

5          the '996 patent application, *i.e.*, from April 9, 2002 (filing date) until

6          September 5, 2006, when the '996 patent issued.  At no point during the

7          relevant time period did any of the individuals that owed a duty of candor

8          and good faith ever disclose the F5 Prior Art to the USPTO.

9     (7)    The F5 Prior Art discloses limitations of the '996 patent claims that were

10         identified by the Examiner in allowing the patent to issue.

11    (8)    For example, the F5 Prior Art generally discloses the "if the packet

12         includes a source address that is associated with a first set of addresses,

13         forwarding the packet to a first traffic manager that is selected using a

14         destination address of the packet" limitation (or a substantial equivalent

15         limitation) recited in asserted independent claims 1, 12, 19-20, and 33 of

16         the '996 patent.

17    (9)    More specifically, the F5 Prior Art's Administrator Guide discloses:  "The

18         BIG/ip Controller is a network appliance that manages and balances traffic

19         for networking equipment such as . . . routers, firewalls, and proxy

20         servers."  *See* Exhibit 2 at paragraph 6, page 1-1.  As illustrated in its

21         Figure 8.3, reproduced below, the Administrator Guide discloses a method

22         and system for load balancing network packets.

23

24

25

---

26    [7]  Aside from the inventors, other F5 employees may have owed a duty of candor as well, such as certain of F5's inhouse counsel who were involved in patent prosecution matters related to the '996 patent.

27

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 16
(C10-00654 MJP)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1



*Figure 8.3 An example of a firewall sandwich configuration*

*Id.* at Figure 8.3, page 8-13.

(10)   The Administrator Guide further discloses "[c]ontrolling network access and traffic flow with filters" based on a specific source, a specific destination, or both (*id.* at paragraphs 1 and 4, page 2-7), and that an administrator can define an IP filter based on a source IP address, a source port number, a destination IP address, and/or a destination port number (*id.* at paragraphs 5-8, page 2-8).

(11)   In addition, the Administrator Guide discloses:  "Intelligent traffic control (ITC) . . . [can] identify specific  traffic, based on . . . client source address and send that traffic to a specific set of servers or devices that can best service the request."  *Id.* at paragraph 1, page 3-1.

(12)   Moreover, the Administrator Guide discloses load balancing using pools and members, where "Pool selection based on client IP address[:] You can

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND AMENDED COMPLAINT - 17
(C10-00654 MJP)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1

1  use this variable to load balance connections based on part of the client's

2  address." *Id.* at paragraph 4, page 3-8.

3  (13)  Further, the Administrator Guide discloses:  "Using destination address

4  affinity (sticky persistence)[:] Address affinity directs requests for a certain

5  destination to the same proxy server, regardless of which client the request

6  comes from." *Id.* at paragraph 2, page 6-7.

7  (14)  Thus, the F5 Prior Art generally discloses that if a network packet includes

8  a source address (*e.g.*, a source IP address) that is associated with a first set

9  of addresses (*e.g.*, a pool based on source addresses or source IP addresses

10  configured in IP filters), the F5 Controller forwards the packet to a first

11  traffic manager (*e.g.*, a router, firewall, proxy server, or virtual server)[8] that

12  is selected using a destination address of the packet (*e.g.*, a specific

13  destination configured in IP filters or a certain destination used in

14  destination address affinity for sticky persistence).

15  (15)  As another example, the F5 Prior Art generally discloses the "if the packet

16  includes a destination address that is associated with a second set of

17  addresses, forwarding the packet to a second traffic manager that is

18  selected using a source address of the packet" limitation (or a substantial

19  equivalent limitation) recited in asserted independent claims 1, 12, 19-20,

20  and 33 of the '996 patent.

21  (16)  More specifically, as stated in paragraphs 49(9)-49(13), the F5 Prior Art

22  generally discloses that if the packet includes a destination address that is

23  associated with a second set of addresses (*e.g.*, a pool based on destination

24  addresses or destination IP addresses configured in IP filters), the F5

25

26  [8] "Traffic management devices, such as traffic management devices 420-422, are any devices that manage network traffic. Such devices include, for example, routers, proxies, firewalls, load balancers, devices that perform network address translation, any combination of the preceding devices, and the like." *See* '996 patent at col. 10, ll. 55-60.

27

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 18
(C10-00654 MJP)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1

1    Controller forwards the packet to a second traffic manager (*e.g.*, a router,

2    firewall, proxy server, or virtual server) that is selected using a source

3    address of the packet (*e.g.*, a specific source configured in IP filters).

4    (17)   As a further example, the F5 Prior Art generally discloses the "the first

5    traffic manager and the second traffic manager are the same for each packet

6    in a flow between two network devices" limitation (or a substantial

7    equivalent limitation) recited in asserted independent claims 1, 12, 19-20,

8    and 33 of the '996 patent.

9    (18)   In particular, the Administrator Guide discloses: "Maintaining persistence

10    across virtual servers that use the same virtual addresses[:] When this mode

11    is turned on, the BIG/ip Controller attempts to send all persistent

12    connection requests received from the same client, within the persistence

13    time limit, to the same node only when the virtual server hosting the

14    connection has the same virtual address as the virtual server hosting the

15    initial persistent connection." *See* Exhibit 2 at paragraph 3, page 6-10.

16    (19)   Thus, the F5 Prior Art generally discloses that the first traffic manager

17    (*e.g.*, the virtual server hosting the initial persistent connection) and the

18    second traffic manager (the virtual server hosting the connection) use the

19    same virtual addresses and thus are the same. *See id.* For each packet in a

20    flow of a persistent connection between two network devices (*e.g.*, between

21    a client and a destination server), F5 BIG/ip Controller directs each packet

22    received from the same client to the same traffic manager (*e.g.*, the same

23    network node). *See id.*

24    (20)   Therefore, the F5 Prior Art generally discloses the "if the packet includes a

25    source address that is associated with a first set of addresses, forwarding

26    the packet to a first traffic manager that is selected using a destination

27    address of the packet, and if the packet includes a destination address that

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 19
(C10-00654 MJP)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1

is associated with a second set of addresses, forwarding the packet to a second traffic manager that is selected using a source address of the packet, wherein the first traffic manager and the second traffic manager are the same for each packet in a flow between two network devices" limitations (or substantial equivalent limitations) recited in asserted independent claims 1, 12, 19-20, and 33 of the '996 patent, which were identified by the Examiner to be allowable subject matter over the prior art of record.

(21)    The F5 Prior Art also generally discloses the "using the source address of the packet includes hashing it to obtain a value that is then used to distribute the packet to the first traffic manager" limitation (or a substantial equivalent limitation) recited in asserted dependent claims 2-3 and 13 of the '996 patent. For example, the Administrator Guide discloses that under a hash mode, the F5 Controller "consistently maps a cookie value to a specific node. When the client returns to the site, the BIG/ip Controller uses the cookie information to return the client to a given node." *See, e.g.*, Exhibit 2 at last paragraph, page 6-5. Further, the F5 BIG/ip™ Controller Reference Guide (version 3.1) ("the Reference Guide") discloses a backward-compatible command "vip <virt ip>[:<port>] netmask <ip> [broadcast <ip>] \ [<ifname> | none ] [unit <unit ID>] define <node ip>[:<port>] \ [...<node ip>[:<port>] ] [special cookie hash <name> <offset><length>]," which hashes an IP address and a port number to obtain a value that is then used to determine a particular traffic manager (e.g., a network node), and distribute the packet to the first traffic manager. *See* Exhibit 3 at page 2-84.

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND AMENDED COMPLAINT - 20
(C10-00654 MJP)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1

(22)   The F5 Prior Art further generally discloses the "the at least one processor includes at least one of a microprocessor, an application specific integrated chip, digital logic, and software" limitation recited in asserted dependent claim 17 of the '996 patent.  For example, the Administrator Guide discloses that the F5 Controller includes software running on its processor.  *Id.* at paragraphs 2-3, page 1-1.

(23)   Thus, the F5 Prior Art generally discloses numerous limitations recited in the asserted claims 1-3, 12-13, 17, 19-20, and 33 of the '996 patent.  *See* paragraph 49(3), *supra*.

(24)   Given the relevance of the teachings of the F5 Prior Art to the '996 claims, and on information and belief, an Examiner deciding whether or not to allow the '996 patent claims would reasonably have considered it important to know about the F5 Prior Art.  As shown above, the F5 Prior Art is highly material to at least the asserted claims 1-3, 12-13, 17, 19-20, and 33 of the '996 patent because that art bears directly on the question of whether the claims of the '996 patent were novel and/or nonobvious to a person of ordinary skill in the art at the time of the claimed invention.

(25)   Indeed, given the relevance of the teachings of the F5 Prior Art to the '996 claims, and on information and belief, a reasonable Examiner armed with the F5 Prior Art would likely have rejected at least the asserted claims of the '996 patent under 35 U.S.C. §§ 102 and/or 103 as being anticipated and/or obvious in view of the F5 Prior Art.

(26)   On information and belief, each of the named employee-inventors (and perhaps others who were substantively involved in the prosecution of the '996 patent, including F5's prosecution counsel) knew or should have known about the F5 Prior Art (at least because it was in F5's possession and particularly if any of the inventors were involved in developing F5's

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 21
(C10-00654 MJP)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1

1   BIG-IP products) and that the F5 Prior Art generally related to network

2   traffic load balancing (the same general technical field as the inventions

3   claimed in the '996 patent), making the F5 Prior Art "material" to the '996

4   claims.

5   (27)   As F5's prosecution counsel for the '996 patent, John W. Branch should

6   have asked the named employee-inventors whether there was any prior

7   relevant F5 products and/or product-related publications in fulfilling his

8   duty of candor and good faith to the USPTO.  Had he done so, the

9   inventors should have identified the F5 Prior Art to him, including that it

10   disclosed and was related to the network traffic load balancing subject

11   matter being claimed in the '996 patent.  As such, Mr. Branch at least

12   should have known about the F5 Prior Art and, on information and belief,

13   Mr. Branch would have disclosed the F5 Prior Art to the USPTO had he

14   known about it.

15   (28)   Moreover, on information and belief, the named employee-inventors (and

16   perhaps others who were substantively involved in the prosecution of the

17   '996 patent) deliberately withheld the F5 Prior Art and with an intent to

18   deceive the USPTO Examiner into believing that there was no prior art

19   that, for example, taught the limitations that were identified by the

20   Examiner in deciding to ultimately allow the '996 claims to issue over the

21   art of record.

22   (29)   In light of the conduct of those who owed a duty of candor to the USPTO

23   during the prosecution of the '996 patent application as discussed above,

24   the '996 patent was procured through inequitable conduct and should be

25   declared unenforceable.

26

27

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 22
(C10-00654 MJP)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1

1    **Inequitable Conduct:  the '427 Patent**

2        50.    A10 alleges that the '427 patent is unenforceable by reason of the patentee's

3    inequitable conduct for failing to disclose the F5 Prior Art during the prosecution of that patent

4    as follows:

5        (1)    F5 filed U.S. Application No. 11/469,843 on September 1, 2006, on behalf

6               of named inventors Carlton G. Amdahl, Robert George Gilde, David D.

7               Schmitt, Paul I. Szabo, and Richard R. Masters (the same group of

8               inventors named in the '466 Provisional Application and in the '996

9               patent), who each assigned all of their rights to F5.  The '427 patent

10              purported to be a continuation of the '996 patent, which claimed benefit of

11              the May 24, 2001, filing date of the '466 Provisional Application.  Mr.

12              Branch represented the inventors and F5 before the USPTO throughout the

13              prosecution of the '427 application.  The '427 patent issued on April 13,

14              2010.

15       (2)    In a Notice of Allowance bearing a November 17, 2009, "date mailed," the

16              Examiner stated why the pending independent claims 1, 9, 13, 18, 22, and

17              25 (which were renumbered as claims 1, 8, 11, 15, 19, and 22 in the issued

18              '427 patent) were allowable over the art of record:

19                   The prior art of the record fails to disclose a forwarding component
20                   that forwards each received packet to a determined traffic manager,
                     wherein the forwarding component determines the traffic manager
21                   based on whether at least one address that is included with a
                     received packet is also associated with a set of addresses, and
22                   wherein if the packet includes a source address that is associated
                     with the set of addresses, using a destination address of the packet
23                   to determine the traffic manager and wherein the forwarding
                     component forwards the packet to the determined traffic manager
24                   using the source address of the packet if it includes the destination
                     address that is associated with another set of addresses in
25                   combination of other limitations recited in claims 1, 9, 13, 18, 22,
                     25.

26

27

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 23
(C10-00654 MJP)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1

That quoted language paraphrases certain limitations that are found in the asserted independent claims 1, 8, 11, 15, 19, and 22 of the '427 patent.[9]

(3)    Paragraphs 50(4) - 50(18) below provide further factual details presently known to A10 related to the failures to disclose the F5 Prior Art, which support A10's allegations that the F5 Prior Art was "material" art that was deliberately and intentionally withheld from the USPTO and that, as a result, the '427 patent should be declared unenforceable for the inequitable conduct that was committed by at least the named inventors and any other individual that was substantively involved in the prosecution of the '427 patent, including F5's prosecution counsel.

(4)    The group of individuals who owed a duty of candor and good faith to the USPTO (*see e.g.,* 37 C.F.R. § 1.56(c)) include the named inventors and F5's prosecution counsel.[10]

(5)    The duty of candor and good faith arose as early as May 24, 2001 (the priority date for the '427 patent, corresponding to the date that F5 filed the '466 Provisional Application), and existed throughout the prosecution of the '427 patent application, *i.e.*, from September 1, 2006 (filing date) until April 13, 2010, when the '427 patent issued.  At no point during the relevant time period did any of the individuals that owed a duty of candor and good faith disclose the F5 Prior Art to the USPTO.

(6)    The F5 Prior Art generally discloses limitations of the asserted '427 patent claims, including the limitations that were identified by the Examiner as constituting allowable subject matter.

---

[9] *See* Plaintiff F5 Networks' Disclosure of Asserted Claims and Preliminary Infringement Contentions, dated November 1, 2010 (identifying claims 1-3, 5, 7-9, 11-12, 15-16, 19-20, and 22-23 of the '427 patent).

[10] Aside from the inventors, other F5 employees may have owed a duty of candor as well, such as certain of F5's inhouse counsel who were involved in patent prosecution matters related to the '427 patent.

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 24
(C10-00654 MJP)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1

(7)     For example, as noted (*see, e.g.,* paragraphs 49(9)-49(13) and 49(18), *supra*), the F5 Prior Art generally discloses:  (i) an apparatus for distributing flows of packets in a network (*e.g.*, the F5 Controller "is a network appliance that manages and balances traffic for networking equipment such as . . . routers, firewalls, and proxy servers."  *See* Exhibit 2 at paragraph 6, page 1-1) comprising a forwarding component (*e.g.*, the F5 Controller includes a component for forwarding packets); (ii) the forwarding component forwards each received packet to a determined traffic manager (*e.g.*, the F5 Controller forwards a received packet to a router, firewall, proxy server, or virtual server; *see id.*); (iii) the forwarding component determines the traffic manager (*e.g.*, the F5 Controller uses a client IP address to determine a router, firewall, proxy server, or virtual server; *see id.*) based on whether at least one address that is included with a received packet is also associated with a set of addresses (*e.g.*, the client IP address is associated with a pool based on source addresses or source IP addresses configured in IP filters; *see id.* at paragraphs 5-8, page 2-8; paragraph 1, page 3-1; paragraph 4, page 3-8); (iv) if the packet includes a source address that is associated with the set of addresses (*e.g.*, a pool based on source addresses or source IP addresses configured in IP filters; *see id.*), using a destination address of the packet to determine the traffic manager (*e.g.*, using IP filter based on a specific destination to determine a router, firewall, proxy server, or virtual server; *see id.*); and (v) the forwarding component forwards the packet to the determined traffic manager using the source address of the packet if it includes the destination address that is associated with another set of addresses (*e.g.*, to maintain persistence across virtual servers using the same virtual addresses, the F5 Controller directs all persistent connection request received from the same

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 25
(C10-00654 MJP)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1   client to the same network node; *see id.* at paragraph 3, page 6-10).

2   (8)   Thus, the F5 Prior Art generally discloses the limitations (or substantially

3   equivalent limitations) recited in asserted independent claims 1, 8, 11, 15,

4   19, and 22 of the '427 patent that were identified by the examiner as the

5   reasons for allowance.  *See* paragraph 50(2), *supra*.

6   (9)   Moreover, the F5 Prior Art generally discloses the "the determined traffic

7   manager is persistent for each packet in at least one flow of packets"

8   limitation (or a substantial equivalent limitation) recited in asserted

9   dependent claims 2, 9, 12, 16, 20, and 23 of the '427 patent.  For example,

10   as noted (*see, e.g.,* paragraph 49(18), *supra*), the Administrator Guide

11   generally discloses that, to maintain persistence across virtual servers using

12   the same virtual addresses, the BIG/ip Controller directs all persistent

13   connection request received from the same client to the same network

14   node.  *See e.g.,* Exhibit 2, paragraph 3, page 6-10.

15   (10)   Furthermore, the F5 Prior Art generally discloses the "using the source

16   address of the packet includes hashing it to obtain a value that is then used

17   to distribute the packet to a particular traffic manager" limitation recited in

18   asserted dependent claim 3 of the '427 patent.  For example, as noted (*see,*

19   *e.g.,* paragraph 49(21), *supra*), the Administrator Guide discloses that

20   under a hash mode, the F5 Controller "consistently maps a cookie value to

21   a specific node.  When the client returns to the site, the F5 Controller uses

22   the cookie information to return the client to a given node."  *See e.g.,*

23   Exhibit 2, last paragraph at page 6-5.  Further, the Reference Guide

24   discloses a backward-compatible command, which hashes an IP address

25   and a port number to obtain a key value that is then used to determine a

26   particular traffic manager (*e.g.*, a network node).  *See e.g.,* Exhibit 3, page

27   2-84.

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 26
(C10-00654 MJP)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

(11)   Moreover, the F5 Prior Art generally discloses the "each address includes at least one of a media access control (MAC) address, a virtual local area network (VLAN) identifier, a transmission control protocol (TCP) port, a user datagram protocol (UDP) port, an internet protocol (IP) address, physical port identifier, or a physical port" limitation recited in asserted dependent claim 5 of the '427 patent.  For example, the Administrator Guide discloses an MAC address as "[a]n address used to represent hardware devices on an Ethernet network."  *See e.g.,* Exhibit 2, last paragraph at Glossary-5.  The Administrator Guide further discloses a TCP port, a UDP port, and an IP address.  *Id.* at paragraphs 2-3, Glossary-11.

(12)   Further, the F5 Prior Art generally discloses the "the apparatus is further arranged to operate as at least one of a switch chassis, router, proxy, firewall, load balancer, or Network Address Translator (NAT)" limitation recited in asserted dependent claim 7 of the '427 patent.  For example, the Administrator Guide discloses that "[t]he BIG/ip Controller is a network appliance that manages and balances traffic for networking equipment such as . . . routers, firewalls, and proxy servers."  *See e.g.,* Exhibit 2, paragraph 6, page 1-1.

(13)   Given the relevance of the teachings of the F5 Prior Art to the '427 claims (*see, e.g.,* paragraphs 50(6)-50(12), *supra*), and on information and belief, an Examiner deciding whether or not to allow at least the asserted claims of the '427 patent would reasonably have considered it important to know about the F5 Prior Art.  As shown above, the F5 Prior Art is highly material to at least the asserted claims of the '427 patent because that art bears directly on the question of whether the  claims of the '427 patent were novel and/or nonobvious to a person of ordinary skill in the art at the time of the claimed invention.

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 27
(C10-00654 MJP)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1

(14)    Indeed, given the relevance of the teachings of the F5 Prior Art to the '427 claims, and on information and belief, a reasonable Examiner armed with the F5 Prior Act would likely have rejected at least the asserted claims of the '427 patent under 35 U.S.C. §§ 102 and/or 103 as being anticipated and/or obvious in view of the F5 Prior Art.

(15)    On information and belief, each of the named employee-inventors (and perhaps others who were substantively involved in the prosecution of the '427 patent, including F5's prosecution counsel) knew or should have known about the F5 Prior Art (at least because it was in F5's possession, and particularly if any of the inventors were involved in developing F5's BIG-IP products), and that the F5 Prior Art disclosed and related to network traffic load balancing (the same general technical field as the inventions claimed in the '427 patent), making the F5 Prior Art "material" to the '427 claims.

(16)    As F5's prosecution counsel for the '427 patent, John W. Branch should have asked the named employee-inventors whether there was any prior relevant F5 products and/or product-related publications in fulfilling his duty of candor and good faith to the USPTO.  Had he done so, the inventors should have identified the F5 Prior Art to him, including that it related to the network traffic load balancing subject matter being claimed in the '427 patent.  As such, Mr. Branch at least should have known about the F5 Prior Art and, on information and belief, Mr. Branch would have disclosed the F5 Prior Art to the USPTO had he known about it.

(17)    Moreover, on information and belief, the named employee-inventors (and perhaps others who were substantively involved in the prosecution of the '427 patent) deliberately withheld the F5 Prior Art and with an intent to deceive the USPTO Examiner into believing that there was no prior art

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 28
(C10-00654 MJP)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1   that, for example, taught the limitations that were ultimately identified by

2   the Examiner as being allowable over the art of record.

3   (18)   In light of the conduct of those who owed a duty of candor to the USPTO

4   during the prosecution of the '427 patent application as discussed above,

5   the '427 patent was procured through inequitable conduct and should be

6   declared unenforceable.  Moreover, the unenforceability of the '996 patent

7   (*see* paragraphs 49(1)-49(29), *supra*) may flow to and also infect the '427

8   patent, which is related to the '996 patent (*see* paragraph 50(1), *supra*).

**Inequitable Conduct:  the '349 Patent**

9

10   51.   A10 alleges that the '349 patent is unenforceable by reason of the patentee's

11   inequitable conduct for failing to disclose the F5 Prior Art during the prosecution of that patent

12   as follows:

13   (1)   F5 filed U.S. Application No. 10/644,692, which ultimately issued as the

14   '349 patent, on August 20, 2003, on behalf of named inventors Paul Szabo,

15   David D. Schmitt, and Ning X. Li, who each assigned all of their rights to

16   F5.  Messrs. Szabo and Schmitt were also named inventors of both the

17   related '466  Provisional Application (to which the '349 patent claims

18   priority) and the related '996 patent (the '349 patent purports to be a

19   continuation-in-part of the '996 patent, which also claims the benefit of the

20   May 24, 2001, filing date of the '466  Provisional Application).  Jamie L.

21   Wiegand represented the inventors and F5 before the USPTO throughout

22   the prosecution of the '349 application.[11]  The '349 patent issued on July 1,

23   2008.

24

25

26   [11]   At the time, Mr. Wiegand was with Darby & Darby P.C., but is now believed to be with Frommer, Lawrence &

27   Haug.

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 29
(C10-00654 MJP)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1

(2)     In a nonfinal Office Action bearing a "mail date" of October 30, 2007, the Examiner indicated that the dependent claims 6 and 7 included allowable subject matter, and rejected the rest of the pending claims.  Specifically, claim 6 recited the "forwarding the received packet based on at least the first field further comprises:  hashing the first field in the received packet to obtain a hash key; and employing the hash key to select the first traffic manager to which the received packet is forwarded" limitations.  In a response filed on January 29, 2008, the applicants amended all the independent claims to incorporate that language from claim 6, and canceled that claim.  On February 26, 2008, the USPTO allowed all the pending claims (*i.e.*, claims 1-5 and 7-30, which were renumbered as claims 1-29 in the issued '349 patent).

(3)      In this case, F5 has asserted claims 11-13 of the '349 patent against A10.[12] Independent claim 11 recites "if the received packet is from the first network device:  determining a target traffic manager based on at least a first field in the received packet, by hashing at least the first field in the received packet to obtain a hash key and employing the hash key to select the target traffic manager to which the received packet is forwarded, and forwarding the received packet to the target traffic manager; and if the received packet is from the second network device:  determining the target traffic manager based on at least a second field in the received packet, wherein the first field is different from the second field; and forwarding the received packet to the target traffic manager, wherein the received packet from the second network device is forwarded to the same target traffic

---

[12]  *See* Plaintiff F5 Networks' Disclosure of Asserted Claims and Preliminary Infringement Contentions, dated November 1, 2010 (identifying claims 11-13 of the '349 patent).

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 30
(C10-00654 MJP)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1

1    manager as is the received packet from the first network device."  That

2    language includes various aspects of the above-quoted language from

3    original claim 6 identified by the Examiner as constituting allowable

4    subject matter over the art of record.

5    (4)    Paragraphs 51(5) – 51(19) below provide further factual details presently

6            known to A10 relating to the failures to disclose the F5 Prior Art, which

7            support A10's allegations that the F5 Prior Art was "material" art that was

8            deliberately and intentionally withheld from the USPTO and that, as a

9            result,  the '349 patent should be declared unenforceable for the inequitable

10           conduct that was committed by at least the named inventors and any other

11           individual that was substantively involved in the prosecution of the '349

12           patent, including F5's prosecution counsel.

13   (5)    The group of individuals who owed a duty of candor and good faith to the

14           USPTO (*see, e.g.*, 37 C.F.R. § 1.56(c)) include the named inventors and

15           F5's prosecution counsel.[13]

16   (6)    The duty of candor and good faith first arose as early as May 24, 2001 (the

17           earliest priority date for the '349 patent, corresponding to the date that F5

18           filed the '466  Provisional Application), and existed throughout the

19           prosecution of the '349 patent application, *i.e.*, from August 20, 2003,

20           (filing date) until July 1, 2008, when the '349 patent issued.  At no point

21           during the relevant time period did any of the individuals that owed a duty

22           of candor and good faith ever disclose the F5 Prior Art to the USPTO.

23   (7)    The F5 Prior Art discloses limitations of the '349 patent claims, including

24           the limitations that were identified by the Examiner as constituting

25

26   _____

     [13]  Aside from the inventors, other F5 employees may have owed a duty of candor as well, such as certain of F5's

27   inhouse counsel who were involved in patent prosecution matters related to the '349 patent.

     A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND          **Williams, Kastner & Gibbs PLLC**
     AMENDED COMPLAINT - 31                                  601 Union Street, Suite 4100
     (C10-00654 MJP)                                         Seattle, Washington 98101-2380
                                                             (206) 628-6600

1      allowable subject matter.

2      (8)     For example, the F5 Prior Art generally discloses the "if the received

3              packet is from the first network device:  determining a target traffic

4              manager based on at least a first field in the received packet, by hashing at

5              least the first field in the received packet to obtain a hash key and

6              employing the hash key to select the target traffic manager to which the

7              received packet is forwarded, and forwarding the received packet to the

8              target traffic manager" limitations recited in asserted independent claim 11

9              of the '349 patent.  For example, as stated in paragraph 49(21), the

10             Administrator Guide discloses that under a hash mode, the F5 Controller

11             "consistently maps a cookie value to a specific node.  When the client

12             returns to the site, the BIG/ip Controller uses the cookie information to

13             return the client to a given node."  *See, e.g.,* Exhibit 2 at last paragraph,

14             page 6-5.  Further, the Reference Guide discloses a backward-compatible

15             command, which hashes an IP address and a port number to obtain a key

16             value that is then used to determine a particular traffic manager (*e.g.*, a

17             network node).  *See, e.g.*, Exhibit 3 at page 2-84.

18     (9)     As another example, the F5 Prior Art generally discloses the "if the

19             received packet is from the second network device:  determining the target

20             traffic manager based on at least a second field in the received packet,

21             wherein the first field is different from the second field; and forwarding the

22             received packet to the target traffic manager" limitations recited in asserted

23             independent claim 11 of the '349 patent.  For example, the Administrator

24             Guide discloses:  "[F5 BIG/ip Controller can control] network access and

25             traffic flow with filters" based on a specific source, a specific destination,

26             or both.  *See* Exhibit 2 at paragraphs 1 and 4, page 2-7.  Thus, the F5

27             Controller can determine the target traffic manager (*e.g.*, a network node)

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 32
(C10-00654 MJP)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

based on a specific source, a specific destination, or both, and forward the received packet to the target traffic manager, wherein the first field can be a specific source and the second field can be a specific destination.

(10) As an additional example, the F5 Prior Art further generally discloses "the received packet from the second network device is forwarded to the same target traffic manager as is the received packet from the first network device" limitation recited in asserted independent claim 11 of the '349 patent.  For example, the Administrator Guide discloses that to maintain persistence across virtual servers using the same virtual addresses, the F5 Controller directs all persistent connection requests received from the same client to the same network node.  *See, e.g.*, Exhibit 2 at paragraph 3, page 6-10.  Also, the Administrator Guide discloses that "[i]n situations where the BIG/ip Controller accepts connections for virtual servers from more than one router or firewall, you can send the return data back through the same device from which the connection originated."  *Id.* at last paragraph, page 2-27.

(11) Thus, the F5 Prior Art generally discloses all the limitations of claim 11, including the specific aspects  identified by the Examiner as allowable subject matter.  *See* ¶ 51(2), *supra*.

(12) Moreover, the F5 Prior Art also generally disclose the "the first field further comprises at least one of a source IP address and a source port number, and the second field further comprises at least one of a destination IP address and a destination port number" limitation recited in asserted dependent claim 13.  For example, the Administrator Guide discloses "[c]ontrolling network access and traffic flow with filters" based on a specific source, a specific destination, or both (*see, e.g.*, Exhibit 2 at paragraphs 1 and 4, page 2-7), and that an administrator can define an IP

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

filter based on a source IP address, a source port number, a destination IP address, and/or a destination port number (*id.* at paragraphs 5-8, page 2-8).

(13)   Therefore, the F5 Prior Art also generally discloses all the limitations of asserted claim 13.

(14)   Given the relevance of the teachings of the F5 Prior Art to at least claims 11 and 13 of the '349 patent, and on information and belief, an Examiner deciding whether or not to allow at least those claims of the '349 patent would reasonably have considered it important to know about the F5 Prior Art.  As shown above, the F5 Prior Art is highly material to at least the asserted claims 11 and 13 of the '349 patent because that art bears directly on the question of whether at least those claims were novel and/or nonobvious to a person of ordinary skill in the art at the time of the claimed invention.

(15)   Indeed, given the relevance of the teachings of the F5 Prior Art to the '349 claims, and on information and belief, a reasonable Examiner armed with the F5 Prior Art would likely have rejected at least the asserted claims of the '349 patent under 35 U.S.C. §§ 102 and/or 103 as being anticipated and/or obvious in view of the F5 Prior Art.

(16)   On information and belief, each of the named employee-inventors (and perhaps others who were substantively involved in the prosecution of the '349 patent, including F5's prosecution counsel) knew or should have known about the F5 Prior Art (at least because it was in F5's possession, and particularly if any of the inventors were involved in developing F5's BIG-IP products) and that the F5 Prior Art generally disclosed the concept of packet routing based on a hashing function (the same general technical field as the inventions claimed in the '349 patent), making the F5 Prior Art "material" to the '349 claims.

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND AMENDED COMPLAINT - 34
(C10-00654 MJP)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1

(17)   As F5's prosecution counsel for the '349 patent, Jamie L. Wiegand should have asked the named employee-inventors whether there was any prior relevant F5 products and/or product-related publications in fulfilling his duty of candor and good faith to the USPTO.  Had he done so, the inventors should have identified the F5 Prior Art to him, including that it disclosed and was related to the general packet routing based on hashing subject matter being claimed in the '349 patent.  As such, Mr. Wiegand at least should have known about the F5 Prior Art and, on information and belief, he would have disclosed the F5 Prior Art to the USPTO had he known about it.

(18)   Moreover, on information and belief, the named employee-inventors (and perhaps others who were substantively involved in the prosecution of the '349 patent) deliberately withheld the F5 Prior Art and with an intent to deceive the USPTO Examiner into believing that there was no prior art that, for example, taught the limitations that were identified by the Examiner in deciding to ultimately allow the '349 patent to issue over the art of record.

(19)   In light of the conduct of those who owed a duty of candor to the USPTO during the prosecution of the '349 patent application as discussed above, the '349 patent was procured through inequitable conduct and should be declared unenforceable.  Moreover, the unenforceability of the '996 patent (*see* paragraphs 49(1)-49(29), *supra*) may flow to and also infect the '349 patent, which is related to the '996 patent (*see* paragraph 51(1), *supra*).

**Inequitable Conduct:  the '809 Patent**

52.   A10 alleges that the '809 patent is unenforceable by reason of the patentee's inequitable conduct for failing to disclose the F5 Prior Art during the prosecution of that patent as follows:

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND AMENDED COMPLAINT - 35
(C10-00654 MJP)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1

(1)    F5 filed U.S. Application No. 11/929,603 on October 30, 2007, on behalf

of named inventors Paul Szabo, David D. Schmitt, and Ning X. Li, who

each assigned all of their rights to F5.  The '809 patent, which claims

priority back to the May 24, 2001, filing date of the '466  Provisional

Application, purports to be a continuation of the '349 patent.  Jamie L.

Wiegand represented the inventors and F5 before the USPTO throughout

the prosecution of the '809 application.  *See* note 15, *supra*.  The '809

patent issued on April 20, 2010.

(2)    In a Notice of Allowance bearing a February 16, 2010, "date mailed," the

Examiner explained why the pending claims were allowable over the art of

record:

> None of the prior [art] of record disclose or fairly suggest hashing
> a source IP address or destination address in a received packet to
> obtain the hash key and employing the hash key as index into [an]
> allocation table [of] traffic managers, wherein a response packet to
> each received packet is forwarded to the same corresponding
> traffic manager.

That quoted language paraphrases certain limitations that are found in the

asserted claims 1-3 of the '809 patent.[14]

(3)    Paragraphs 52(4)-52(17) below provide further factual details presently

known to A10 relating to the failures to disclose the F5 Prior Art, which

support A10's allegations that the F5 Prior Art was "material" art that was

deliberately and intentionally withheld from the USPTO and that, as a

result, the '809 patent should be declared unenforceable for the inequitable

conduct that was committed by at least the named inventors and any other

individual that was substantively involved in the prosecution of the '809

---

[14]  *See* Plaintiff F5 Networks' Disclosure of Asserted Claims and Preliminary Infringement Contentions, dated November 1, 2010 (identifying claims 1-3 of  the '809 patent).

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 36
(C10-00654 MJP)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1

1      patent, including F5's prosecution counsel.

2      (4)     The group of individuals who owed a duty of candor and good faith to the

3      USPTO (*see, e.g.*, 37 C.F.R. § 1.56(c)) include the named inventors and

4      F5's prosecution counsel.[15]

5      (5)     The duty of candor and good faith arose as early as May 24, 2001 (the date

6      that F5 filed the '466 Provisional Application) and existed throughout the

7      prosecution of the '809 patent application, *i.e.*, from October 30, 2007

8      (filing date) and until April 20, 2010, when the '809 patent issued.  At no

9      point during the relevant period did any of the individuals that owed a duty

10      of candor and good faith disclose the F5 Prior Art to the USPTO.

11      (6)     The F5 Prior Art discloses limitations of the '809 patent claims, including

12      those that were identified by the Examiner as allowable subject matter.  *See*

13      ¶ 52(2), *supra*.

14      (7)     For example, the F5 Prior Art generally discloses the "determines the

15      corresponding traffic manager based in part on hashing either source

16      information or destination information in each received packet to determine

17      a hash key useable as an index into an allocation table of traffic managers"

18      limitation (or a substantial equivalent limitation) as recited in asserted

19      independent claims 1 and 3 of the '809 patent.

20      (8)     More specifically, the F5 Prior Art's Administrator Guide discloses that

21      under a hash mode, the F5 Controller "consistently maps a cookie value to

22      a specific node.  When the client returns to the site, the F5 Controller uses

23      the cookie information to return the client to a given node."  *See, e.g.*,

24      Exhibit 2 at last paragraph, page 6-5.  Moreover, the F5 Prior Art includes

25

26      [15]  Aside from the inventors, other F5 employees may have owed a duty of candor as well, such as certain of F5's in-

27      house counsel who were involved in patent prosecution matters related to the '809 patent.

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 37
(C10-00654 MJP)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1

the Reference Guide, which discloses a backward-compatible command "vip <virt ip>[:<port>] netmask <ip> [broadcast <ip>] \ [<ifname> | none ] [unit <unit ID>] define <node ip>[:<port>] \ [...<node ip>:<port>] ] [special cookie hash <name> <offset><length>]," which hashes an IP address and a port number to obtain a value that is then used to determine a particular traffic manager (*e.g.*, a network node). *See, e.g.,* Exhibit 3 at page 2-84. Thus, the F5 Prior Art discloses that the F5 Controller can hash a source or destination IP address and a port number of a packet to determine a hash key, use the hash key as an index to an allocation table to map to a traffic manager (*e.g.*, a network node), and distribute the packet to the traffic manager.

(9) As a further example, the F5 Prior Art also discloses the "a response packet to each received packet is forwarded to the same corresponding traffic manager" limitation (or a substantial equivalent limitation) as recited in asserted independent claims 1 and 3 of the '809 patent. In particular, the Administrator Guide discloses: "Maintaining persistence across virtual servers that use the same virtual addresses[:] When this mode is turned on, the BIG/ip Controller attempts to send all persistent connection requests received from the same client, within the persistence time limit, to the same node only when the virtual server hosting the connection has the same virtual address as the virtual server hosting the initial persistent connection." *See, e.g.,* Exhibit 2 at paragraph 3, page 6-10. Further, the Administrator Guide discloses a per-connection routing option, under which "[t]he device from which a connection originated is sometimes referred to as the last hop to the BIG/ip Controller. You can configure the BIG/ip Controller to send packets back to the device from which the connection originated when that device is part of a last hop pool of devices

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND AMENDED COMPLAINT - 38
(C10-00654 MJP)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1

1   associated with a virtual server." *See id.* at last paragraph, page 2-27;

2   paragraph 2, page 2-27.

3   (10)   Therefore, the F5 Prior Art generally discloses the "the routing means

4   determines the corresponding traffic manager based in part on hashing

5   either source information or destination information in each received

6   packet to determine a hash key useable as an index into an allocation table

7   of traffic managers, wherein a response packet to each received packet is

8   forwarded to the same corresponding traffic manager" limitations (or

9   substantial equivalent limitations) as recited in asserted independent claims

10   1 and 3 of the '809 patent, portions of which limitations were generally

11   identified by the Examiner as being allowable subject matter.

12   (11)   As another example, the F5 Prior Art also discloses the "wherein source

13   information further comprises a source IP address and a source port number

14   in the received packet, and wherein destination information further

15   comprises a destination IP address and a destination port number in the

16   received packet" limitation recited in asserted dependent claim 2 of the

17   '809 patent.  Specifically, the Administrator Guide discloses "[c]ontrolling

18   network access and traffic flow with filters" based on a specific source, a

19   specific destination, or both.  *See, e.g.,* Exhibit 2 at paragraphs 1 and 4,

20   page 2-7.  Further, the Administrator Guide discloses that an administrator

21   can define an IP filter based on a source IP address, a source port number, a

22   destination IP address, and/or a destination port number.  *See id.* at

23   paragraphs 4-8, page 2-8.  More specifically, the Administrator Guide

24   discloses,

25   4. From the **Type** list, choose **Accept Packet** to allow traffic, or
    **Deny Packet** to reject traffic.

26   5. In the **Source IP Address** box, only if you want the filter to be
    applied to network traffic based on its source, enter the **IP** address

27

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 39
(C10-00654 MJP)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

from which you want to filter traffic.
6. In the **Source Port** box, only if you want the filter to be applied to network traffic based on its source, enter the port number from which you want to filter traffic.
7. In the **Destination IP Address** box, enter the **IP** address to which you want to filter traffic, only if you want the filter to be applied to network traffic based on its destination.
8. In the **Destination Port** box, enter the port number to which you want to filter traffic, only if you want the filter to be applied to network traffic based on its destination.

*Id.* (emphases in original).

(12)   Given the relevance of the teachings of the F5 Prior Art to the '809 claims, and on information and belief, an Examiner deciding whether or not to allow the '809 patent claims would reasonably have considered it important to know about the F5 Prior Art.  As shown above, the F5 Prior Art is highly material to the asserted claims 1-3 of the '809 patent because that art bears directly on the question of whether the claims of the '809 patent were novel and/or nonobvious to a person of ordinary skill in the art at the time of the claimed invention.

(13)   Indeed, given the relevance of the teachings of the F5 Prior Art to the '809 claims, and on information and belief, a reasonable Examiner armed with the F5 Prior Art would likely have rejected the asserted claims of the '809 patent under 35 U.S.C. §§ 102 and/or 103 as being anticipated and/or obvious in view of the F5 Prior Art.

(14)   On information and belief, each of the named employee-inventors (and perhaps others who were substantively involved in the prosecution of the '809 patent, including F5's prosecution counsel) knew or should have known about the F5 Prior Art (at least because it was in F5's possession, and particularly if any of the inventors were involved in developing F5's BIG-IP products) and that the F5 Prior Art related to network traffic load

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 40
(C10-00654 MJP)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1

balancing using a hashing mode (the same technical field as the inventions claimed in the '809 patent), making the F5 Prior Art "material" to the '809 claims.

(15) As F5's prosecution counsel for the '809 patent, Jamie L. Wiegand should have asked the named employee-inventors whether there was any prior relevant F5 products and/or product-related publications in fulfilling his duty of candor and good faith to the USPTO.  Had he done so, the inventors should have identified the F5 Prior Art to him, including that it related to the network traffic load balancing using hashing subject matter being claimed in the '809 patent.  As such, Mr. Wiegand at least should have known about the F5 Prior Art and, on information and belief, Mr. Wiegand would have disclosed the F5 Prior Art to the USPTO had he known about it.

(16) Moreover, on information and belief, the named employee-inventors (and perhaps others who were substantively involved in the prosecution of the '809 patent) deliberately withheld the F5 Prior Art and with an intent to deceive the USPTO Examiner into believing that there was no prior art that, for example, taught the limitations that were ultimately identified by the Examiner in deciding to allow the '809 claims to issue over the art of record.

(17) In light of the conduct of those who owed a duty of candor to the USPTO during the prosecution of the '809 patent application as discussed above, the '809 patent was procured through inequitable conduct and should be declared unenforceable.  Moreover, the unenforceability of the '996 patent (*see* paragraphs 49(1)-49(29), *supra*) and/or of the '349 patent (*see* paragraphs 51(1)-51(19), *supra*) may flow to and also infect the '809 patent, which is related to both the '996 and '349 patent (*see* paragraph

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND AMENDED COMPLAINT - 41
(C10-00654 MJP)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1

1    52(1), *supra*).

2

3    **TENTH COUNTERCLAIM**
     **(F5's Infringement of U.S. Patent No. 7,552,126)**

4    53.    A10 realleges and incorporates by reference the allegations set forth in paragraphs

5    1-52(17) of its Counterclaims.

6    54.    On June 23, 2009, the United States Patent and Trademark Office duly and

7    lawfully issued U.S. Patent No. 7,552,126 ("the '126 Patent"), titled "Access Record Gateway."

8    A copy of the '126 patent is attached hereto as Exhibit 4.

9    55.    A10 is the assignee of record of the '126 patent.  It owns the '126 patent and has

10   the exclusive right to *inter alia* (i) grant licenses under that patent and (ii) sue for infringement of

11   its claims and collect fees, costs, and damages from such infringement, including damages for

12   past infringement.

13   56.    The '126 patent is broadly directed to systems and methods for managing access

14   records of user access to a secure data network including an access record gateway and an access

15   record datastore.  The access record gateway acquires and records certain types of user

16   information in an access record that can be updated with additional user information, and stores

17   the access record in the access record datastore.  The system may include a security application

18   that communicates with the access record gateway in connection with a security query.  *See*

19   Exhibit 4, Abstract.

20   57.    F5's product offerings include the BIG-IP® Local Traffic Manager that F5 states

21   manages "network traffic that comes into or goes out of a local area network (LAN), including

22   an intranet."  *See* Exhibit 5 ("Configuration Guide for BIG-IP® Local Traffic Manager™"), at

23   page 1-1, lines 1-5.

24   58.    F5's product offerings also include the BIG-IP® Access Policy Manager that F5

25   describes as "a software component of the BIG-IP hardware platform that provides your users

26   with secured connections to Local Traffic Manager virtual servers, specific web applications, or

27   the entire corporate network," and provides "audit tools including full-session audit trails, drill-

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 42
(C10-00654 MJP)

1  down session queries, and customizable reports and queries." *See* Exhibit 6 ("Configuration

2  Guide for BIG-IP® Access Policy Manager™"), at page 1-2, lines 1-5 and  page 1-3, lines 19-22.

3       59.    F5's product offerings further include the FirePass product that F5 states is "a

4  network appliance [or controller] that provides remote users with secure access to corporate

5  networks," and provides "audit tools including full-session audit trails, drill-down session

6  queries, and customizable reports and queries." *See* Exhibit 7 ("FirePass® Controller

7  Administrator Guide"), at page 1-1, lines 1-3 and  page 1-3, lines 31-33.

8       60.    F5 has been and currently is making, using, selling, offering for sale, and/or

9  importing into in the United States various product offerings ("the F5 Products").   The F5

10  Products include the F5 BIG-IP product family, which includes, *e.g.*, the F5 BIG-IP Access

11  Policy Manager running as a component for the F5 BIG-IP Local Traffic Manager on the BIG-IP

12  Application Switch Platforms (such as, F5's 11050 series, 8950 series, 8900 series, 6900 series,

13  3900 series, and 3600 series) and the F5 BIG-IP Local Traffic Manager Virtual Edition.  The F5

14  Products also include the F5 FirePass products, including the FirePass 1000, FirePass 1200,

15  FirePass 4100, and FirePass 4300 models, and the FirePass Virtual Edition.

16       61.    F5 has been and is directly and indirectly infringing the '126 patent, literally

17  and/or under equivalently, by *inter alia* making, using, selling, offering for sale, and/or importing

18  into in the United States the F5 Products, which practice or enable the practice of the inventions

19  covered by one or more of the claims of the '126 patent, by inducing others to infringe the '126

20  patent, and by contributing to the infringement of the '126 patent.

21       62.    F5 does not have a license or any other form of permission to use any of the

22  inventions covered by any of the claims of the '126 patent.

23       63.    Upon information and belief, F5 has willfully infringed the '126 patent.

24       64.    F5's infringement of the '126 patent has injured A10 and will continue to injure

25  A10, unless and until it is enjoined from further infringement.  F5's infringement is causing harm

26  to A10 that is irreparable and for which there is no adequate remedy at law, unless F5 is enjoined

27  by this Court.

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

**PRAYER FOR RELIEF**

WHEREFORE, A10 prays for a declaration and judgment in its favor against F5 for the following relief:

A. dismiss the Complaint with prejudice;

B. rule that each of the '996, '349, '427, and '809 patents are invalid, and even if valid, that none of those patents is infringed by A10;

C. rule that each of the '996, '349, '427, and '809 patents are unenforceable due to inequitable conduct;

D. rule that A10 has not misappropriated any F5 trade secret;

E. rule that this is an "exceptional" case justifying an award to A10 of its attorney's fees, expenses, and costs incurred in defending this action pursuant to 35 U.S.C. § 285;

F. rule that F5 has infringed and is presently infringing, directly or indirectly, the A10 '126 patent;

G. rule that F5 has willfully infringed the '126 patent;

H. award A10 damages or other monetary relief, including prejudgment and post-judgment interest, for F5's infringement of the '126 patent;

I. award A10 enhanced damages, up to and including trebling of A10's actual damages, pursuant to 35 U.S.C. § 284 for F5's willful infringement of the '126 patent;

J. enjoin F5, including its directors, officers, agents, employees, successors, assignees, and all those in active concert or participation with them, from any further infringement, of the '126 patent; and

K. grant such other and further relief as the Court may deem just and proper.

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 44
(C10-00654 MJP)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), A10 demands trial by jury of all issues so triable.

Dated this 15th day of December 2010.

<div style="margin-left:40%">

s/John A. Knox, WSBA #12707
Attorneys for Defendant A10 Networks, Inc.
WILLIAMS, KASTNER & GIBBS PLLC
601 Union Street, Suite 4100
Seattle, WA  98101-2380
Telephone  (206) 628-6600
Facsimile   (206) 628-6611
jknox@williamskastner.com

Scott A. Herbst (*Admitted Pro Hac Vice*)
  scott.herbst@finnegan.com
Scott R. Mosko (*Admitted Pro Hac Vice*)
  scott.mosko@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
Stanford Research Park
3300 Hillview Avenue
Palo Alto, California  94304-1203
Telephone:  (650) 849-6600
Facsimile:   (650) 849-6666

Smith R. Brittingham IV (*Admitted Pro Hac Vice*)
smith.brittingham@finnegan.com

Lionel M. Lavenue (*Admitted Pro Hac Vice*)
lionel.lavenue@finnegan.com

FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.

Attorneys for Defendant A10 NETWORKS, INC.

</div>

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT - 45
(C10-00654 MJP)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2010, I caused the foregoing to be filed using the

Court's ECF system, which will cause service on the below-named counsel for F5 Networks,

Inc.:

                        Ramsey M. Al-Salam (SWAB No. 18822)
                        ralsalam@perkinscoie.com
                        Ryan J. McBrayer (SWAB No. 28338)
                        rmcbrayer@perkinscoie.com
                        S. Kameron Parvin (WSBA No. 41016)
                        kparvin@perkinscoie.com
                        William D. "Skip" Fisher (WSBA No. 27475)
                        wfisher@perkinscoie.com
                        PERKINS COIE, LLP
                        1201 Third Avenue, Suite 4800
                        Seattle, Washington  98101-3099
                        Telephone:   (206) 359-8000
                        Facsimile:    (206) 359-9000

Dated this 15th day of December 2010.

                        s/John A. Knox, WSBA #12707
                        Attorneys for Defendant A10 Networks, Inc.
                        WILLIAMS, KASTNER & GIBBS PLLC
                        601 Union Street, Suite 4100
                        Seattle, WA  98101-2380
                        Telephone  (206) 628-6600
                        Facsimile   (206) 628-6611
                        jknox@williamskastner.com

                        Attorneys for Defendant A10 NETWORKS, INC.

A10 NETWORKS, INC.'S AMENDED ANSWER TO SECOND
AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND
COUNTERCLAIMS - 46
(NO. C10-00654 MJP)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

3002887.1