UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| F5 NETWORKS INC, | CASE NO. 2:10-CV-00654-MJP |
| Plaintiff, | ORDER ON CLAIM CONSTRUCTION (PART 1) |
| v. | |
| A10 NETWORKS, INC., | |
| Defendant. | |

The Court, having received and reviewed:

1. Defendant A10 Networks, Inc.'s Opening Claim Construction Brief (Dkt. No. 99)

2. Plaintiff F5 Networks, Inc.'s Rebuttal Claim Construction Brief for F5 Patents (Dkt. No. 107)

3. Defendant A10 Networks, Inc.'s Surreply to Plaintiff F5 Network Inc.'s Rebuttal Brief (Dkt. No. 111)

4. Plaintiff F5 Networks, Inc.'s Opening Claim Construction Brief for F5 Patents (Dkt. No. 101)

5. Defendant A10 Networks, Inc.'s Responsive Claim Construction Brief (Dkt. No. 105)

1      6.   Plaintiff F5 Networks, Inc.'s Notice of Supplemental Authority Regarding Claim

2            Construction (Dkt. No. 118)

3    and all attached declarations and exhibits, makes the following ruling:

4          This claim construction opinion construes the disputed terms in four interlocking patents.

5    Plaintiff F5 Networks, Inc. ("F5" or "Plaintiff") has accused Defendant A10 Networks Inc.

6    ("A10" or "Defendant") of infringing on a multitude of claims covering all patents. The parties

7    submitted a lengthy list of terms to be construed which, for purposes of judicial economy and

8    efficiency, the Court divided into two parts, the first of which is addressed by this order.  For the

9    reasons stated herein, the Court adopts the constructions set forth in the *Claim Construction*

10   section of the order *infra*.

11        **Background**

12        Each single communication over the internet (an e-mail, an order to an internet retail

13   website, a click on a link from one webpage to another, etc.) is broken into a series of "packets"

14   of data; the communication is disassembled as it leaves the "source" computer and reassembled

15   at the "destination" computer.  The patents at issue concern methods for distributing packets of

16   data to a multitude of computer devices called "traffic managers" using the source and/or

17   destination information in each packet in a way that insures that each packet in a "flow" of

18   packets (a single communication string) is sent to the same traffic manager.   There are four

19   interlocking patents – U.S. Patent No. 7,102,996 (the "'996 patent"); U.S. Patent No. 7,697,427

20   (the "'427 patent"); U.S. Patent No. 7,395,349 (the "'349 patent"); and U.S. Patent No. 7,702,809

21   (the "'809 patent").

22        The provisional applications for these patents were filed in May 2001.  The non-

23   provisional applications were filed between 2002 and 2007, during which time they were under

24

1  examination by the Patent and Trademark Office ("PTO").  The patents were issued between

2  2006 and 2010.  Following the filing of this lawsuit, A10 requested reexamination of the F5

3  patents.  Following an initial reexamination process, the PTO denied each of A10's requests.  *See*

4  Dkt. No. 106-14 and 106-20 for reexamination denials of the '427 and '809 Patents.  A10 has

5  petitioned the PTO to overturn the denials, alleging that the examiner "ignore[d] the prosecution

6  history, applied[d] the wrong legal standard, mischaracterize[d] the cited art, and adopt[ed] a

7  claim construction that is significantly narrower than the construction asserted by the Patent

8  Owner."  Fisher Decl., Ex. B.  That appeal is pending and the Court regards the reexamination

9  process as "unconcluded" at this point.

10  **Analysis**

11  *Principles of Construction*

12  In construing a claim term, courts should look first "to the words of the claims

13  themselves… to define the scope of the invention."  Vitronics Corp. v. Conceptronic, Inc., 90

14  F.3d 1576, 1582 (Fed. Cir. 1996).  Generally, claim terms are accorded their "ordinary and

15  customary meaning" (Id.), which is defined as the meaning that the terms would have to a person

16  of ordinary skill in the relevant art at the time of the invention.  Phillips v. AWH Corp., 415 F.3d

17  1303, 1313 (Fed. Cir. 2005). In determining the meaning of a claim term under that standard,

18  courts are permitted to consider any "intrinsic evidence," which includes (1) the claims (which

19  "provide substantial guidance as to the meaning of particular claim terms;" Id. at 1314); (2) the

20  specifications (the "single best guide to the meaning of a disputed term;" Vitronics, 90 F.3d at

21  1582; and (3) the prosecution history.  The claims must be read in view of the specifications

22  (Phillips, 415 F.3d at 1315), but the Court is not permitted to import or "read limitations" from

23  the specifications into the claims.  Id. at 1323.

24

1    It is also permissible to consider "extrinsic evidence" – any evidence outside the patents

2    themselves and their prosecution history (e.g., expert or inventor testimony, dictionaries and

3    treatises).  <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 980 (Fed. Cir. 1995)(*en banc*).

4    When intrinsic evidence unambiguously describes the scope of a patented invention, however,

5    reliance on extrinsic evidence is improper.  <u>Vitronics</u>, 90 F.3d at 1583.

6                    *The Reexamination Process as Prosecution History*

7            Before turning to the claim constructions themselves, the Court addresses a preliminary

8    matter which has impacted the parties' analysis and argument on several of the disputed claims.

9    The issue concerns the question of whether to admit the findings of the PTO reexaminer in

10   denying A10's request for reexamination as part of the patents' "prosecution history," thereby

11   entitling those findings to consideration as intrinsic evidence to be accorded an appropriate

12   weight in the Court's determination.

13           A10 has argued vigorously for the consideration of the reexaminer's findings as intrinsic

14   evidence of the prosecution history; F5 has opposed that evidence just as strenuously.  The Court

15   has concluded that, while reexamination proceedings are part of the prosecution history, the

16   evidence which Defendant wishes the Court to consider is part of a pending reexamination

17   process and thus not ripe for consideration or entitled to the same weight as those portions of the

18   prosecution history which represent the final decision of the PTO.

19           The patent reexamination procedure is authorized at 35 U.S.C. § 312(a):

20           Not later than three months after the filing of a request for *inter partes* reexamination…,
             the [PTO] Director shall determine whether a substantial new question of patentability
21           affecting any claim of the patent concerned is raised by the request…

22   That same statutory scheme mandates that "[a] record of the Director's determination under

23   subsection (a) shall be placed in the official file of the patent…"  PTO Rule 923 reiterates that

24

the reexamination determination is part of the official patent file, which is the source of the

patent prosecution history. 37 C.F.R. § 1.923; *see also* Manual of Patent Examining Procedure

§ 2467 ("the concluded reexamination file… containing the request and the decision denying the

request becomes part of the patent's record"). The Court finds that the patent record includes

reexaminer's decisions.

The Federal Circuit has utilized the decisions of reexaminers in its rulings. In <u>Cole v.

Kimberly Clark Corp.</u>, 102 F.3d 524, 530 (Fed. Cir. 1996), the court cited the reexamination

decision of the patent at issue:

> On 10 July 1991, the examiner denied Cole's first request for reexamination.
> The examiner stated that the patents cited by Cole "are not material to the
> examination of the instant patent claims since the essential features of the
> claims… are not present in the cited patents."

There is some further indication that the Federal Circuit considers reexamination decisions to be

admissible. In a decision concerning the appealability of a stay pending reexamination, the

Court said:

> One purpose of the reexamination procedure is… to facilitate trial of [patent claim
> validity] by *providing the district court with the expert view of the PTO* (when a
> claim survives the reexamination proceeding).

<u>Gould v. Control Laser Corp.</u>, 705 F.2d 1340, 1342 (Fed. Cir. 1983)(emphasis supplied).

Plaintiff tries to draw a distinction between "prosecution history" and "the patent record,"

arguing that "prosecution history consists of the record of PTO proceedings *that led to the

issuance of the patents*, and does not include the PTO's *ex parte* denials of A10's reexamination

requests." Pltf Rebuttal, p. 5 (emphasis in original). It cites no direct authority for this definition

of "prosecution history," citing instead to the <u>Phillips</u> case, which does not provide full support

for its argument.

The prosecution history, which we have designated as part of the "intrinsic evidence," **consists of the complete record of the proceedings before the PTO** and includes the prior art cited during the examination of the patent. (*citation omitted.*)  Like the specification, the prosecution history provides evidence of how **the PTO and the inventor understood the patent**. *See* Lemelson v. Gen. Mills, Inc., 968 F.2d 1202, 1206 (Fed. Cir.1992).

Phillips,  415 F.3d at 1317 (emphasis supplied).

The Phillips opinion is less than clear-cut, however, in defining the parameters of "prosecution history."  The Circuit Court goes on (in the paragraph above) to state that "the prosecution history was created by the patentee in attempting to explain and obtain the patent" (Id.), which suggests that it may be the patentee's statements, not the reexaminer's rulings, which have evidentiary significance.  And, indeed, the majority of the cases where courts have admitted evidence of reexamination proceedings have concerned the statements or arguments of patentees which have then been used by district courts to construe disputed claims.[1]  But the cases are not devoid of instances where the patent reexaminer's construction has been considered part of the prosecution history (*see* St. Clair Intellectual Property Consultants, Inc. v. Canon Inc., 2011 WL 66166, *6 (Fed. Cir. 2011); On Demand Machine Corp. v. Ingram Industries, 442 F.3d 1331, 1338-39 (Fed. Cir. 2006); Marquip, Inc. v. Fosber America, Inc., 198 F.3d 1363, 1368 (Fed. Cir. 1999); Procter & Gamble Co. v. Kraft Foods Global, Inc., 549 F.3d 842, 847-48 (Fed. Cir. 2008), and the Court sees no reason why this should not be so – the prosecution history represents "an ongoing negotiation between the PTO and the applicant" (Phillips, 415 F.3d at 1317 (emphasis

---

[1] *See* In re Katz Interactive Call Processing Patent Litigation, 2011 WL 607381, *15 (Fed. Cir. 2011); Adams Respiratory Therapeutics, Inc. v. Perrigo Co., 616 F.3d 1283, 1287 (Fed. Cir. 2010); CIAS, Inc. v. Alliance Gaming Corp., 504 F.3d  1356- 1362-63 (Fed. Cir. 2007); On Demand Machine Corp. v. Ingram Industries, 442 F.3d 1331, 1338-39 (Fed. Cir. 2006); Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd., 401 F.3d 1367, 1372 (Fed. Cir. 2005); Alza Corp. v. Mylan Laboratories, Inc., 391 F.3d 1365, 1371 (Fed. Cir.  2004); C.R. Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858, 868-69 (Fed. Cir. 2004); Arlington Industries, Inc. v. Bridgeport Fittings, Inc., 345 F.3d 1318, 1332 (Fed. Cir. 2003); Spectrum Intern., Inc. v. Sterilite Corp., 164 F.3d 1372, 1379 (Fed. Cir. 1998); CVI/Beta Ventures, Inc. v. Tura LP, 112 F.3d 1146, 1158 (Fed. Cir. 1997).

1  supplied)) and, "[b]ecause an examiner in reexamination can be considered one of ordinary skill

2  in the art, his construction of the asserted claims carries significant weight" (St. Clair, id. at *6).

3      The *ex parte – inter partes* examination distinction that Plaintiff attempts to draw (by

4  arguing that the reexamination record here contains no statements by F5) is a somewhat artificial

5  one.  The fact is that the patentee is permitted to submit additional explanation to the PTO in an

6  *ex parte* reexamination proceeding if it wishes (it is the third-party requester who is prohibited

7  from doing so); F5 chose not to in this particular instance.

8      In the final analysis, however, the Court's acknowledgement that reexamination

9  proceedings in general can be considered as part of prosecution history does not compel

10  consideration of the particular evidence submitted in this instance; specifically, the findings of

11  the reexaminer in a patent proceeding which is not yet concluded.  A10 has appealed the denial

12  of its request to reexamine the patents, thus the Court is faced with a reexamination record which

13  is not complete.  Under similar circumstances, district courts have declined to consider material

14  from unconcluded reexamination proceedings.  Edizone, L.C. v. Cloud Nine, 2008 WL 584991,

15  *1-*2 (D. Utah 2008); BarTex Research, LLC v. FedEx Corp., 2009 WL 5061838, *4 (E.D. Tex.

16  2009).  Like our fellow courts, this Court is unaware of (and Defendant has not cited to) any case

17  where the arguments of the patentee or the pronouncements of the reexaminer in a pending

18  reexamination proceeding have been admitted as prosecution history.  The Court will not do so

19  here.

20      *Claim Construction*

21      The following section  sets out the claim terms addressed by this order, followed by the

22  Court's construction of those terms (in ***bold italics***).

23

24

Claim Terms 1.1 – 1.5

**Claim Term 1.1 ("if[/when] the packet includes a source[/destination] address that is associated with a [first/second] set of addresses, forwarding the packet to a first[/second] traffic manager that is selected using a destination[/source] address of the packet"):** *when the device performing the method determines that the packet includes a source[/destination] address that is contained in a first/[second] predefined class of addresses, the device performing the method sends the packet to a selected traffic manager based on the destination[/source] address*

**Claim Term 1.2(a) ("if the packet includes a source [/destination] address that is associated with the set of addresses, using a destination address of the packet to determine the traffic manager [/forwarding the packet to the traffic manager using a source address of the packet]"):** *same as Claim Term 1.1.*

**Claim Term 1.2(b): ("the forwarding component forwards the packet to the determined traffic manager using the source [/destination] address of the packet if it includes the destination [/source] address that is associated with another [/the] set of addresses"):** *same as Claim Term 1.1.*

**Claim Term 1.3: ("if the packet includes a source [/destination] address that is associated with a [/the/another] set of addresses", "the distributor is [further] configured [/arranged] to use a destination [/source] address of the packet to determine the one of the plurality of traffic managers to forward the packet to"):** *same as Claim Term 1.1.*

**Claim Term 1.4: ("for each packet in the flow with a source[/destination] address associated with a set of addresses, forwarding that packet to [said] one of the plurality of

**traffic managers that is selected based at least in part on a destination[/source] address of the packet"):** *same as Claim Term 1.1.*

**Claim Term 1.5: ("enabling each packet in the flow with a source[/the destination] address associated with a [/the] set of addresses to be forwarded to [said] one of the plurality of traffic managers that is selected based at least in part on a destination [/source] address of the packet"):** *same as Claim Term 1.1.*

This actually covers six terms (including 1.2(a) and 1.2 (b)) submitted by the parties, all of which describe in some fashion how the packets are forwarded to a traffic manager based on either their source or destination.

F5 proposes six different constructions based on the variations in the language in each term. Plaintiff cites to the doctrine of "claim differentiation" in support of this parsing out of terms ("… there is still a presumption that two independent claims have different scope when different words or phrases are used in those claims;" Seachange Int'l, Inc. v. C-COR Inc., 413 F.3d 1361, 1368-69 (Fed. Cir. 2005), but the Court does not find the presumption sufficient to overcome the evidence. While the variations on the claim term do occasionally use different words (but more commonly simply a reordering of the same words) in these six phrases, they all say the same thing to describe the same operation. Plaintiff also argues that "different language… is presumed to have different meaning" (Pltf. Rebuttal, p. 7), but the case cited for that proposition merely says that "when an applicant uses different terms in a claim *it is permissible to infer* that he intended his choice of different terms to reflect differentiation in the meaning of those terms." Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc., 381 F.3d 1111, 1119-20 (Fed. Cir. 2004) (emphasis supplied). The matter is clearly within the

1 Court's discretion, and the Court finds that all these variations on the claim terms can be

2 adequately subsumed within a single construction.

3 The Court's construction of these claim term variations is a modification of Defendant's

4 proposed construction. The Court does not find Plaintiff's substitution of "in the event" for "if"

5 to be helpful in clarifying the meaning of the claim. "Courts construe claim terms in order to

6 assign a fixed, unambiguous, legally operative meaning to the claim." Chimie v. PPG Indus.,

7 Inc., 402 F.3d 1371, 1377 (Fed. Cir. 2005). The Court finds that the phrase "when the device

8 performing the method determines" reflects the ordinary and customary construction that would

9 be attributed by one of ordinary skill in the art. This finding is based on the testimony of experts

10 from both sides. See Def. Exh. 9, Jeffay Rebuttal, at 26-27; Dkt. No. 106-4 ("Kesidis Dep. II")

11 at 96:12-97:4 ("any device that practices this method would have to make that determination to

12 practice the method"). The claim terms describe an "if/then" condition. "When the device

13 performing the method determines" the condition is satisfied, then the action is taken.

14 The second term to be construed within these first set of claim term variations is

15 "associated with." Plaintiff seeks simply to assign a dictionary synonym to the phrase. F5 first

16 cites to the common dictionary definition of "associated" ("connect or join together;" American

17 Heritage Dictionary) then substitutes "related to" as "consistent with the ordinary meaning" of

18 "associated." Pltf Brief, p. 5. To speak of packet addresses as being "connected or joined

19 together" with another set of addresses is meaningless, and therefore simply substituting a

20 synonym for "associated" is equally unhelpful.

21 The Court finds that the phrase "the packet includes a source[/destination] address that is

22 contained in a first-/[second] predefined class of addresses" is a construction supported by the

23 intrinsic evidence of the claim specifications. See '996 Patent, 16:40-43, 51-57. The use of the

24

word "contained in" to describe the relationship of the "source[/destination] address" to the "first/[second] set of addresses" in these Claim Terms much more accurately captures the function as described in the patent specifications. Plaintiff is correct, however, that A10's additional description "having special or different processing occurring based on the addresses" imports limitations from specifications which are not contained in the claims at issue.

Similarly, the portion of Defendant's proposed construction which describes the "device performing the method" as "determin[ing] a first/[second] action algorithm for selecting the first/[second/one of the multiple] traffic manager(s)" imports a further limitation from the specifications. The Court also rejects Defendant's proposed inclusion of the phrase "through the computer network" as unsupported by the claim language or the specifications – while the device ("[a] method and system for distributing network traffic;" '996 Patent, Abstract) unquestionably functions in a computer networking environment, the Court finds no language in the claim or the specifications which describes this particular operation as occurring "through a computer network."

Finally, the Court also finds no support for Plaintiff's proposed inclusion of "whereby the destination[/source] address is the variable that controls the selection of the traffic manager" in its proposed construction. F5 cites to no part of the intrinsic record which supports inclusion of this clause, relying instead on the unsupported declaration of its expert and claiming that the patent "suggests" that the source/destination address is the controlling variable. Pltf Brief, p. 7. This is insufficient cause to include this limitation in construction of the claim term.

Claim Term 2

**Claim Term 2**: ("**if the received packet is from the first[/second] network device: determining a[/the] target traffic manager based on at least a first[/second] field in the received packet**"): *when the device performing the method receives a packet from the 1st[/2nd] network device, selecting a[/the] target traffic manager based on a set of attributes that includes at least a 1st[/2nd] field in the received packet.*

The Court adopts a modified version of the construction proposed by Plaintiff. The Court does (for the reasons cited *supra*) adopt Defendant's phrase "when the device performing the method" as a suitable formulation of the "if/then" condition stated in this claim term. However, as with its preceding construction, the Court finds A10's version of the second claim term too complex to promote a clearer understanding of the disputed language. Furthermore, its injection of "using a first function or algorithm" continues to find no support in the claim language or the specifications. A10 justifies its proposal based on the "prosecution history," by which it means the reexamination decision regarding the '349 patent (Def. Rebuttal, p. 7). As discussed *supra*, the Court is disinclined to consider that evidence as part of the prosecution history at this point.

Nor is the Court convinced that the phrase "from the first[/second] network device" is properly construed as "the received packet is either (i) a client request to a server, or (ii) a server response back to the client" as Defendant proposes. While the preferred embodiment of the '349 patent does refer to the "invention enabl[ing] a client-side flow of packets and a server-side flow of packets" ('349 Patent, 2:30-31), the claim language itself refers only to a "network device," which is defined in the "parent" ('996) patent as "[a]ny [] device that is capable of connecting to a network." '996 Patent, 7:58-60. The '996 patent even contains specifications which detail a packet being transmitted between two servers. Id., 10:40-54 and Fig. 5.

Claim Term 3

**Claim Term 3**: (**"forward" / "forwards" / "forwarded" / "forwarding"**):
*transmit/transmits/transmitted/transmitting*

The Court is asked to construe the term "forward," which appears in all the asserted patents. Defendant's proposed construction of this term ("transmit a packet to a network device over a computer network") draws the battle lines between the parties clearly – "to a network device over a computer network" restricts F5's patent to transmissions between stand-alone devices, while Plaintiff argues that no such limitation is inherent in this term within the context of the patent claims at issue. The Court must agree with Plaintiff.

The claims consistently distinguish between "network devices" and "traffic managers" (*see* e.g., Claims 1 and 19 of the '996 Patent, which refer to "a plurality of network devices <u>and</u> traffic managers;" 21:45-46, 23:26-27)(emphasis supplied). The '996 Patent also discloses that "a traffic management device may be implemented using one or more personal computers, POCKET PCs, wearable computers, processors, multiprocessor systems… and the like." <u>Id.</u> at 11:10-17.

A10 makes much of drawings in the various patents which show traffic managers and distributors in separate boxes. *See*, e.g., Patent '996, Fig. 5. The Court does not find this conclusive evidence that these two devices necessarily must exist in separate, stand-alone units. As Plaintiff points out, the patent illustrations show direct lines of connection between traffic managers and distributors, while the "client" and "server" sources are connected only through a

wide Area Network (WAN) or Local Area Network (LAN), which more accurately fits

Defendant's proposed construction of transmission "over a computer network."[2]

The '996 Patent language also states that "[i]n other embodiments of the invention, one

or more distributors may be integrated with one or more traffic management devices and switch

fabrics." Id. at 20:58-60, 23:16-17. This language is not consistent with a construction which

restricts the term "forwarding" to transmission "over a computer network."

Finally, the Court notes that in none of the claims in any of the four asserted patents is the

term "forward" confined to an action which can only be performed "over a computer network."

The limitation proposed by A10's construction is simply not supported by the claim language or

specifications and the Court need look no further than these primary sources to reject

Defendant's proposal.

However, the Court does choose to adopt the synonym proposed by A10 – " transmit" –

as a more accurate construction of the term "forward" in the context of these patents. Plaintiff's

own expert admits that Plaintiff's proposed construction of this word – "send" – is not "helpful"

to the Court. Def. Exh. 8 (Kesidis Depo) at 51;20-52:8. The term is simply too broad and

imprecise, encompassing the transfer of material and non-material objects ("send" could apply as

easily to letters and packages as to packets of electronic data). The Court adopts the definition

found in the Random House Dictionary (2011) – "to send forward; *transmit*" – as more precisely

focused on the electronic nature of these patents.

---

[2] Nor is the Court dissuaded by the fact that, in at least one of the '996 Patent Figures (Fig. 11), the traffic managers are assigned their own network address. The '996 Patent makes it clear that traffic managers *may* be stand-alone computers with their own network addresses, but the specifications just as clearly do not limit the devices to that configuration.

<u>Claim Term 4</u>

**<u>Claim Term 4</u>: ("source[/destination] address"):** *A number or series of numbers that identifies one network device as being the source[/destination] of the packet, distinguishing it from the other network sources on the computer network.*

Plaintiff lays claim to the "lexicographer's rule" in defending their proposed construction of the term "source[/destination] address":

> A number or series of numbers that are used to identify the location from which a packet is sent[/to which a packet is to be sent], including a source[/destination] IP address, a source[/destination] port number, a source[/destination] VLAN ID, a physical port identifier, or some combination thereof.

There is no question that a patentee can be his or her own lexicographer. "[T]he specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." <u>Phillips</u>, 415 F.3d at 1316.

But the patent specifications do not support F5's proposed construction. Both patents at issue disclose that

> a source or destination address may be an IP address, *a port address*, such as UDP or TCP, VLAN ID, physical port identifier, physical port or some combination thereof. Alternatively a source or destination address may be some other layer 1-7 address.

'996 Patent, 16:6-10; '427 Patent, 14:31-36 (emphasis supplied). Plaintiff's proposed construction moves beyond the bounds established by its own lexicography.

In both its lay and technical usages, the term "address" connotes "location;" in the context of these patents, the location of the source or destination from which or to which a packet

is being transmitted.  Plaintiff's own expert, when asked what the effect would be if a traffic

manager were to strip everything off a packet except the port number, responded:  "Oh, dead in

the water… the internet would choke on that packet.  It would go nowhere, because it has *no*

*destination address*.  You just stripped it off."  Kesidis Dep. At 75:1-12 (emphasis supplied).

Even Plaintiff's expert recognized that a port number alone will not identify "a location from

which a packet is to be sent [/to which a packet is to be sent]."[3]

Elsewhere in the language of the patent, F5 uses the term "port number" (*see*, e.g., '996

Patent at 14:38-41: "When distributor **505** receives a packet from client **410**, with an IP address

and port number…"), from which the Court concludes that the patentee understood that "port

number" and "port address" represent different concepts.  Under these circumstances, the Court

does not find that Plaintiff's expert's opinion that "port number" could be construed to cover

"port address" (Ex. 12, Kesidis Rebuttal, at 6-7) is entitled to any weight.  Expert testimony may

be used to clarify and explain patented technology, "but it may not correct errors or erase

limitations or otherwise diverge from the description of the invention as contained in the patent

documents."  Aqua-Aerobic Sys., Inc. v. Aerators, Inc., 211 F.3d 1241, 1245 (Fed. Cir. 2000).

The Court does not find A10's redundant use of "address" in its proposed construction to

be helpful in clarifying the claim term at issue, so substitutes the more accurate and descriptive

"a number or series of numbers."  In every other respect, however, the Court adopts Defendant's

proposed construction of this term.

---

[3] The Court also understands, based on Plaintiff's presentation at oral argument, that its technology does
not use the "source[/destination] address" to actually deliver the packet to its intended destination, but rather as a
number to be "hashed" to determine the traffic manager to which the packet is routed.  Nevertheless, the patentee
has chosen the word "address" and the Court must construe the term according to how a person skilled in the art
would understand that word.

Claim Term 6

**Claim Term 6: ("mechanism that forwards each packet" / "forwarding component that forwards each received packet to a determined traffic manager"):** *a processor (in the distributor) that transmits the packet to a selected traffic manager*

The central dispute concerning this Claim Term is whether it invokes the "means-plus-function" limitation found at 35 U.S.C. § 112 ¶6 ("112(6)"):

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, materials, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, materials, or acts described in the specification and equivalents thereof.

Finding that the means-plus-function limitation has been invoked allows the patentee to generically identify a "structure" for performing the function described in the claim, but thereafter limits the construction to whatever identified means appear in the specifications elsewhere in the patent.

The Court considers the question of whether to apply the means-plus-function limitation to be a close one. Where the patent claim describes something as a "means for" or a "step for" performing some function, the limitation is presumed; that is not the case here. Where the patent claim does not use the terms "means" or "steps," it is not presumed, but it is a "rebuttable non-presumption." *See* CCS Fitness v. Brunswick Corp., 228 F.3d 1359, 1369 (Fed. Cir. 2002)(when a claim terms lacks the word "means," the presumption can be overcome if the challenger demonstrates that "the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function;'" quoting Watts v. XL Sys., Inc., 232 F.3d 877, 880 (Fed. Cir. 2000)).

1    F5 (which disputes the applicability of the limitation) argues that the terms "mechanism"

2  and "forwarding component" are "sufficient recitations of structure to avoid application of

3  Section 112(6)."  Pltf  Brief, p. 19.  Plaintiff cites to dictionary (both lay and technical)

4  definitions of "mechanism" and "component" in support of this position.  The only case cited in

5  support of this position is a district court opinion from the Eastern District of Pennsylvania

6  which, upon close reading, does not stand for the proposition that use of the generic term

7  "mechanism" adequately connotes a structure.  Katz v. AT&T Corp., 63 F.Supp.2d 583, 592

8  (E.D.Pa. 2000) ("Even if a mechanism is defined in functional terms, *such as "filter," "brake,"*

9  *"clamp," or "detent mechanism,"* or if it does not call to mind a single well-defined structure, it

10  *may* not be subject to means-plus-function analysis.")(emphasis supplied.)

11    There is, however, case law holding that generic recitation of a "mechanism" followed by

12  recitations of functions of the mechanism fails to recite sufficiently definite structure and must be

13  construed under 112(6).  *See* Massachusetts Institute of Technology v. Abacus Software, 462

14  F.3d 1344, 1354 (Fed. Cir. 2006); Welker Bearing Co. v. PHD, Inc. 550 F.3d 1090, 1096 (Fed.

15  Cir. 2008)("'mechanism'… is simply a substitute for the term 'means for.'").

16    In Welker, the Circuit Court noted that

17

18         no adjective endows the claims 'mechanism' with a physical or structural
           component… [and the claim] provides no structural context for determining the
19         characteristics of the 'mechanism' other than to describe its function… [so that]
           one of skill in the art would have no recourse but to turn to the… patent's
20         specification to derive a structural connotation for the generically claimed
           'mechanism'…

21

22  Welker at 1096.  That would appear to be the case here.  F5 turns to the patent specifications –

23  "that the mechanism or component for forwarding packets to traffic managers can be 'software

24  and/or hardware' or 'hardware and/or software'" (Pltf Brief, p. 20, citing '996 patent 8:57-9:6) –

to support its construction.  The specification that F5 refers to is so broadly generic itself as to be useless (<u>everything</u> in a computer is hardware or software), but it highlights the non-specific nature of its use of "mechanism" in this Claim Term.

Additionally,

> [i]n a means-plus-function claim in which the disclosed structure is a computer or microprocessor, programmed to carry out an algorithm, the disclosed structure is *not* the general purpose computer, but rather *the special purpose computer programmed to perform the disclosed algorithm.*

<u>WMS Gaming, Inc. v. Int'l Game Tech.</u>, 184 F.3d 1339, 1349 (Fed. Cir. 1999)(emphasis supplied).  Thus "hardware and/or software" (which discloses "the general purpose computer") is an insufficient specification. The Court's construction discloses the "special purpose computer programmed to perform the disclosed algorithm."

"Forwarding component" fares little better – as Defendant points out, the adjective "forwarding" is the present participle of a verb and emphasizes *function*, not structure. "Component" is no more definitive a structural recitation than "mechanism."  Defendant's expert Jeffay's opinion that "forwarding component" "would not have suggested any definite form or structure to one of ordinary skill in the art" (Def. Brief, Ex. 1, ¶¶ 111, 117; Ex. 9, ¶¶ 79, 86-87) is not controverted by Plaintiff.  Defendant states (and Plaintiff does not controvert) that the parties are agreed that the term "component" should not be treated any differently than "mechanism."

Faced with recent Federal Circuit precedent, however, the Court must stop short of invoking the means-plus-function limitation.  In <u>Inventio AG v. ThyssenKrupp Elevator Americas Corp.</u>, ___ F.3d ___, 2011 WL 2342744 (Fed. Cir. 2011), the appellate court overturned a district court ruling that "modernizing device" and "computing unit" recited means-plus-function limitations lacking sufficiently definite structure to avoid § 112, ¶ 6.  Finding that

these claim terms were not purely functional limitations, the Circuit Court ruled that, in delineating the connecting components, describing the interaction with those components and describing the processing performance in the patent's written descriptions, the patentee had connoted sufficiently definite structure to avoid application of § 112, ¶ 6. Id. at *8, *9.

The Court cannot find a meaningful distinction between the claim terms at issue here and those which are the subject of the Inventio opinion. Although the terms at issue lack structural definition, the written descriptions "delineate the components" of the device (a central processing unit within a distributor; see '996 Patent at 11:30-32, 8:63-9:3, and Figs. 2 and 3), describe how those interact with the other components of the system ("forwards each received packet to a determined traffic manager" ['427 Patent, Claims 1 and 8]; and "forward[s] to one of the plurality of network devices through an intermediate traffic manager" ['996 Patent, Claim 33]), and "describe the processing that the [ ] device performs" ("determines the traffic manager based on whether at least one address that is included with a received is also associated with a set of addresses;" '427 Patent, Claim 1). The Inventio standard is met, and the terms will be construed without the means-plus-function limitation.

The Court finds that F5's proposed construction is inadequate as a clarification of these terms. "A functionally-discrete part of the apparatus" is too vague to apprise a jury of the nature of the device. Similarly, Plaintiff's proposal that the "functionally-discrete part of the apparatus… may include hardware and/or software" simply serves to introduce further vagueness into the description. If the apparatus "may" include hardware and/or software, presumably it may not include it, which produces an absurd result in a system that is clearly intended to function only in a networked computer environment.

The Court adopts the portion of A10's proposed construction concerning structure. That structure – "a processor (in the distributor)" -- is revealed in specifications appearing in the '996 patent at 8:57-59 ("software and/or hardware associate with *distributor* **415** makes a determination as to where the packet should go") and at 18:20-55 ("*distributor* forwards a packet," "*distributor* **505** sends that response to the same traffic management device," "*distributor* **505**… sends the response to the traffic management device). The specifications are rampant with descriptions of "processing," which justifies the inclusion of the term "processor."

The Court will not adopt the portion of A10's proposal that imports the limitations regarding <u>how</u> the distributor determines the forwarding process ("accesses a database," etc.). These limitations are nowhere found in the claims at issue and the Court will not import them from other claims to be included as part of the construction of these Claim Terms. (The analysis regarding exclusion of the phrase "through the computer network" has been discussed earlier and is incorporated herein; *see* "Claim Terms 1.1 – 1.5," at 11.)

**Conclusion**

This order covers only half of the terms which the parties have asked the Court to construe in this complex piece of patent litigation. The Court will hear oral argument on the remaining half on July 29 at 1:30 p.m. Hopefully this ruling will help guide the parties in the remainder of their presentation.

The clerk is ordered to provide copies of this order to all counsel.

Dated July __8___, 2011.

Marsha J. Pechman
United States District Judge